[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a foreclosure action brought by the Dime Savings Bank of New York, FSB (Dime), against Marie Missoule Lorent, and her daughter, Marguerite Lorent. Pearl-Main Investment Company, a second mortgagee, is also a defendant. The writ was returnable on March 6, 1990. The complaint refers to a promissory note executed by the Lorents and payable to the Dime Real Estate Services-Connecticut, Inc., dated August 10, 1986, in the original principal amount of $225,600. This note was secured by a first mortgage on a single family residence owned by the Lorents and located at 21 George Street in Stamford. The complaint states that the promissory note and mortgage were assigned to the plaintiff Dime on August 20, 1986. The plaintiff alleges that the Lorents have not made any payments on this mortgage loan since August 1, 1989. A default entered against the Lorents on October 16, 1990, when they responded to a motion for disclosure of defense by stating that they had no defense.
Following some preliminary proceedings and orders, a judgment of strict foreclosure ultimately entered on March 23, 1992, with a law date of April 15, 1992. The court determined at that time that the fair market value of the subject premises was $205,000, and that the debt owed the plaintiff was approximately $291,208. Title to 21 George Street became absolute in the plaintiff on April 15, 1992, as the defendants failed to redeem. An execution of ejectment of the Lorents issued on January 25, 1993, pursuant to General Statutes 49-22. The Lorents moved (#142) for a stay of execution of ejectment. The motion, dated March 5, 1993, claims that the plaintiff offered to CT Page 9909 postpone efforts to effect the ejectment, provided that the Lorents would agree to repurchase the subject premises for $220,000, including a 10% nonrefundable deposit; that the Lorents had so agreed, and were ready, willing and able to purchase the subject premises, but that the plaintiff had reneged on the agreement.
A hearing on the motion to stay execution was held over the course of ten days of trial, during which time four witnesses testified, and approximately ten exhibits were introduced into evidence. The contentions of the Lorents in resisting ejectment were summarized in their brief, which urges that a stay is warranted because the plaintiff was liable under the following theories: "1) Breach of an oral contract; 2) Breach of implied covenant of good faith and fair dealing; 3) unclean hands; 4) Detrimental reliance and estoppel; 5) negligent misrepresentation; 6) intentional and gross negligent conduct; 7) violation of the Connecticut Unfair Trade Practices Act and 8) Abuse of process."
The Lorents also argue that the current stay of execution should be extended because of the pendency in this court of an action for strict performance and damages, which is captioned Marie Missoule Lorent et al v. Dime Savings, CV 93-0131281.[1]
The defendants also claim that the named defendant, Marie Missoule Lorent, is ill and infirm, and that it would be inequitable to force her removal from the subject premises.[2]
The stay of ejectment currently in place has been in effect since March of 1993, when the Lorents filed their motion for stay. The plaintiff, in opposing a continuation of such stay, contends that it did not have a valid, binding written contract with the Lorents pursuant to which the defendants were entitled to repurchase the subject premises, and that even if an oral contract did exist, it is unenforceable.
The evidence indicates that after title to 21 George Street became absolute in the plaintiff on April 15, 1992, plaintiff and defendants did discuss the possibility of the defendants repurchasing their former home from the plaintiff. These discussions, however, never culminated in a written agreement. A deputy sheriff advised that he would execute upon the ejectment of the defendants on February 25, 1993. Defendant Marguerite Lorent, who is a practicing attorney and has filed a pro se appearance in this proceeding, went to the plaintiff's Uniondale, Long Island, headquarters on February 19, 1993, where she met with two of Dime's officers involved in the foreclosure process, Heinrich Charles and Warren Schwartz. The Dime officers advised CT Page 9910 Marguerite Lorent that they agreed in principle to resell the property to the Lorents for $220,000, which was roughly the principal amount of the mortgage debt, if Dime's attorney recommended it.
Later that same day, Lawrence M. Garfinkel, of the plaintiff's law firm Reiner Reiner, of Hartford, left a message on Ms. Lorent's telephone answering machine. The message, the contents of which had been previously approved by Schwartz, stated that the Dime agreed to sell the subject premises back to the Lorents for $220,000, conditioned upon receipt of a nonrefundable deposit of 10% of the purchase price, or $22,000.[3] Ms. Lorent left a message at Garfinkel's office on February 22, 1993, indicating her agreement in general with the plaintiff's proposal, except that she could send only $10,000 as a deposit instead of the $22,000 requested, with the $12,000 balance to be forwarded to Dime in approximately two weeks.
Garfinkel called Ms. Lorent back on February 23, 1993, and said that he interpreted her offer of a $10,000 deposit as an unacceptable counteroffer which, in effect, constituted a rejection of the original offer. In addition, Garfinkel told Ms. Lorent that there had been a "miscommunication" on the part of the plaintiff regarding the offer to resell the premises to the Lorents for $220,000, and that this offer was being withdrawn. According to Garfinkel, this miscommunication was based on Dime's policy of reselling foreclosed property to mortgagors only for the full amount of the indebtedness, which by this time was approximately $340,000 including interest and late charges.[4] The figure $220,000 represented only the principal of the mortgage debt. This proposal was rejected by the Lorents. The ejectment was postponed by agreement until March 9, 1993, and the instant motion was filed on March 5, 1993.
On these facts, the Lorents claim that they had a binding, enforceable contract with Dime to repurchase their home, and therefore that the execution of ejectment should be stayed. In resisting the motion for a stay, Dime argues that the Statute of Frauds, General Statutes 52-550, prevents enforcement of an oral promise to convey real estate.
In support of their contentions, the Lorents offered a number of theories none of which, in this court's opinion, warrants any further stay of execution. Their first claim is that they had a binding oral contract with plaintiff to repurchase their home for $220,000. CT Page 9911 I disagree, because Ms. Lorent did not accept the plaintiff's term that a nonrefundable deposit of $22,000 be transmitted. Rather, she told the plaintiff's lawyer that she would send $10,000 at that point, and the balance later. A counteroffer has been defined as "an offer made by an offeree to his offeror relating to the same matter as the original offer and proposing a substituted bargain differing from that proposed by the original offer." 1 Restatement (Second), Contracts 106 (1981). The proposal to send a $10,000 deposit instead of $22,000 constitutes a counteroffer, which was never accepted by plaintiff, and shortly thereafter plaintiff's proposal to resell the premises to the Lorents for $220,000 was withdrawn.
Even if there had been a meeting of the minds regarding the terms of a repurchase of 21 George Street, General Statutes 52-550, the Statute of Frauds, provides that: "[n]o civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party to be charged . . . . upon any agreement for the sale of real property or any interest in or concerning real property. . . ." It is clear that no writing regarding the resale of the subject premises ever existed. Thus, the Lorents' motion to stay the ejectment is not warranted because there is not an agreement in writing giving them any interest in their former home. The defendants claim that the Statute of Frauds does not apply to an agreement to forbear from ejectment. However, the basis of the request for a stay is that Dime agreed to sell 21 George Street back to the Lorents, which is an "agreement for the sale of real property."
The defendants contend that they fall within an exception to the Statute of Frauds on the basis that plaintiff is estopped from claiming the benefit of the statute due to defendants' detrimental reliance and part performance after the Dime agreed to sell 21 George Street back to the defendants. Certain acts by a promisee may be sufficient to take an oral contract out of the Statute of Frauds. Ubysz v. DiPietro,185 Conn. 47, 54, 440 A.2d 830 (1981). "The doctrine of part performance requires . . . conduct that is `referable to and consistent with [an] oral agreement [between] the parties.'" (Citation omitted). Dunham v. Dunham, 204 Conn. 303, 314,528 A.2d 1123 (1987). The court must find that the party seeking enforcement of the agreement: (1) reasonably relied on the agreement and on the continuing assent of the party against whom CT Page 9912 enforcement is sought; and (2) that the party has so changed his position that injustice can only be avoided by specific enforcement of the agreement. Id., 315. Related to the doctrine of part performance is the concept of estoppel. A claim of estoppel is predicated upon proof "`of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury.'" (Citation omitted). O'Sullivan v. Bergenty, 214 Conn. 641, 648, 573 A.2d 729 (1990).
The offer to sell was communicated to Ms. Lorent on February 19, 1993, was withdrawn by plaintiff on February 23, so there was insufficient time for the defendants to change their position in reliance on plaintiff's offer. The only claim of a change of position is Ms. Lorent's testimony that she telephoned several mortgage brokers to make preliminary inquiries about mortgages, which fails to meet the definition of "change of position" in reliance.
The Lorents also contend that the stay of execution should remain in existence until the suit for specific performance has been decided because Dime breached the implied covenant of good faith and fair dealing. This claim is premised on plaintiff's withdrawal of its offer to resell the subject premises for $220,000. Connecticut recognizes the doctrine of good faith and fair dealing in the performance of contractual obligations. Magnan v. Anaconda Industries, Inc., 193 Conn. 538, 567, 479 A.2d 781
(1984). "`Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" Warner v. Konover, 210 Conn. 150, 154, 553 A.2d 1138 (1989), quoting 1 Restatement (Second), Contracts 205 (1982). The offer by Charles and Schwartz to resell for $220,000 turned out to be contrary to the Dime's policy of reselling foreclosed premises only for the full amount of the indebtedness, not just the mortgage principal. The plaintiff, however, voluntarily sat down at the negotiating table with the defendants, and it is not because of a lack of good faith and fair dealing on its part that nothing came to fruition. The defendants rejected the offer to resell for the full amount of their indebtedness.
A claim of negligent misrepresentation by Dime is also advanced by the Lorents on the basis that Schwartz and Charles failed to competently perform their jobs, and that the Lorents sustained "detrimental reliance" as a result. Connecticut "has CT Page 9913 long recognized liability for negligent misrepresentation." D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 217, 520 A.2d 217 (1987). "[E]ven an innocent misrepresentation of fact `may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth.'" Id., quoting Richard v. A. Waldman Sons, Inc., 155 Conn. 343, 346, 232 A.2d 307 (1967); see also 522 of the Restatement Second of Torts (1979). The Lorents additionally assert that plaintiff's conduct in first making and then withdrawing an offer to resell 21 George Street to the defendants constitutes an intentional misrepresentation, the essential elements of which, according to Miller v. Appleby, 183 Conn. 51,54-55, 438 A.2d 811 (1981), are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." As stated, however, in J. Frederick Scholes Agency v. Mitchell, 191 Conn. 353, 359, 464 A.2d 759 (1983), "[a]n actionable misrepresentation, whether made knowingly, recklessly, negligently or innocently, must be made for the purpose of inducing action upon it." The figure of $220,000 was an innocent error as I view it, and was corrected after two business days had elapsed, and before there was any detrimental reliance induced by plaintiff.
A violation of the Connecticut Unfair Trade Practices Act, General Statutes 42a-110 et seq. (CUTPA), is claimed. Although well aware that there is a split of authority in the Superior Court regarding this issue, I believe that this statute does not apply to banks, since national banks such as Dime are subject to federal regulations concerning unfair and deceptive acts and practices pursuant to 15 U.S.C. § 45a(2). See Connelly v. Housing Authority, 213 Conn. 354, 362, 567 A.2d 1212 (1990). Even assuming that CUTPA did in fact apply to banks, I would disagree with the claim that plaintiff's conduct violated the statute, which requires allegations and proof that: "(1) the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) it is immoral, unethical, oppressive, or unscrupulous; and (3) it causes substantial injury to consumers [competitors or other businessmen]. (Citations omitted.)" Vezina v. Nautilus, 27 Conn. App. 810,818-19, 610 A.2d 1312 (1992). A simple contract breach is not sufficient to establish a violation of CUTPA, particularly CT Page 9914 where a count "simply incorporates by reference the breach of contract claim and does not set forth how or in what respect the defendant's activities are either immoral, unethical, unscrupulous, or offensive to public policy." Aussenhandel v. Grant Airmass Corp.,2 Conn. L. Rptr. 590 (October 17, 1990, Lewis, J.). See also Emlee Equipment Leasing Corp. v. Waterbury Transmission,3 Conn. L. Rptr. 711
(January 24, 1991, Blue, J.); Central Delivery Service of Washington, Inc. v. Peoples Bank, 2 Conn. L. Rptr. 449 (October 1, 1990, Goldberg, J.). Similarly, a single act of negligence is not grounds for liability under CUTPA. Caruso v. Rite Aid Corp.,2 CSCR 532 (April 28, 1987, Spada, J.). Plaintiff's conduct in misreading a computer screen and giving a wrong figure for a resale to the mortgagors, which was corrected after several days, does not appear to fit within the definition of CUTPA by any stretch of the imagination.
Finally, the defendants accuse the plaintiff of abuse of process, which requires proof that the legal process has been used in "an improper manner or to accomplish a purpose for which it was not designed . . ." Varga v. Parelis, 137 Conn. 663, 667, 81 A.2d 112
(1951). Since title to 21 George Street vested in plaintiff, and the Lorents refuse to leave, the process of ejectment under General Statutes 49-22 is being properly used for the purpose for which it is designed.
Regarding the claim that the stay should remain in existence until the action for specific performance has been decided, no valid argument for such a stay has been advanced by the defendants. If the Lorents ultimately prevail in their suit for specific performance, and Dime still owns 21 George Street, the property can be reconveyed to the Lorents. If Dime no longer owns the premises, money damages can be awarded to the Lorents.
With respect to the argument that the named defendant is ill and needs to stay in her home, no proof thereof was offered except testimony to that effect by her daughter, defendant Marguerite Lorent. Ms. Lorent also agreed that her mother was performing shopping and household chores. No evidence was introduced that a "one-level flat" referred to previously could not be found elsewhere. In this connection, although the defendants use the word "equity" in their briefs, interestingly, no mention was made therein of the fact that the plaintiff loaned the Lorents over $225,000, and has not received any money since the summer of 1989. Yet, four years later the Lorents continue to occupy the home that they were able to purchase with the money loaned to them by plaintiff, who, since April of 1992, CT Page 9915 as owner of the premises, must pay taxes and insurance. If one were to decide this motion for a stay on balancing the equities, they would weigh in favor of plaintiff. In any event, defendants' request for a continued stay of execution is denied because of a failure to have a meeting of the minds with plaintiff regarding the terms of a repurchase, and because the requirements of the Statute of Frauds have not been met.
Plaintiff contends that pursuant to General Statutes 49-22, the ejectment statute, a former mortgagor/owner is not entitled to a stay of execution on equitable grounds, and that relief is only possible by reason of General Statutes 49-23 ("a tender by the defendant of the amount of the debt, with interest and the costs of the suit, is a bar to its further prosecution"). This argument, although plausible, has not been addressed because the relief requested by defendants is being denied for the reasons previously stated.
The motion for stay of execution is denied, and the stay previously imposed by this court last March is vacated.
So Ordered.
Dated at Stamford, Connecticut, this 10 day of November, 1993.
William B. Lewis, Judge