ROBERT L. VEZINA ET AL. *v.* NAUTILUS POOLS, INC.
(10314)

NORCOTT, LAVERY and LANDAU, Js.

Argued March 26—decision released June 16, 1992

*John C. Monroe,* for the appellants (plaintiffs).

*Brian Thomas Walsh,* for the appellee (defendant).

LANDAU, J. This is an appeal by the plaintiffs[1] from a judgment of the trial court, rendered after a trial to the court, awarding them damages in the amount of $250. The plaintiffs claim that the trial court improperly (1) failed to apply the parol evidence rule, (2) found that the plaintiffs failed to sustain their burden of proving a breach of any warranties and any violation of the Connecticut Unfair Trade Practices Act (CUTPA); General Statutes § 42-110a et seq.; (3) failed to award attorney's fees, disbursements, or punitive damages, and (4) computed damages. We agree with the plaintiffs' fourth claim only.

The following facts are necessary to our resolution of this appeal. In 1986, the plaintiffs responded to an advertisement placed by the defendant for the sale of

---

[1] In the original action, the plaintiffs included Robert L. Vezina and Frances Vezina. During the course of the proceedings in the trial court, Robert Vezina died and the action was continued by Frances Vezina.

a swimming pool for $988 and were visited by one of the defendant's sales representatives, Scott Zirkus. As a result of this meeting, the plaintiffs purchased an aboveground pool from the defendant at a cost of over $7000. The parties entered into a sales contract that contained an integration clause stating that "this contract and agreement contains the entire agreement between the parties hereto, and all prior negotiations, representations, agreements and understandings of every name, nature and description have been merged into or superseded by this brief." Subsequent to the installation of the pool, the plaintiffs instituted an action against the defendant alleging (1) violation of CUTPA, (2) breach of contract, (3) breach of implied warranties, and (4) negligence in the installation of the pool. The trial court found in favor of the defendant on the first, third and fourth counts of the plaintiffs' complaint and in favor of the plaintiffs on the second count of their complaint, and awarded them $250.

I

The plaintiffs' first claim involves the applicability of the parol evidence rule. In relation to this claim, the plaintiffs allege that Zirkus, in his capacity as the defendant's representative, made several representations to induce them to purchase the pool. Specifically, they allege that he represented that (1) the pool would be installed with a "bowled center,"[2] (2) the metal decking would contain an air coolant system, (3) the pool wall would accommodate a standard twenty-four foot pool cover, (4) the defendant would provide a "showplace installation," (5) service calls would be made within forty-eight hours, and (6) the written contract would contain a twenty year, transferable, prorated limited manufacturer's warranty. The plaintiffs claim that the trial court improperly concluded that the parol

---

[2] A bowled center is deeper than the outer edge of the pool.

evidence rule did not apply to the representations made by Zirkus relating to the installation of the pool, the pool decking, the pool cover and the forty-eight hour service. We disagree.

It often has been noted that the parol evidence rule is not a rule of evidence, but a substantive rule of contract law. *Security Equities* v. *Giamba,* 210 Conn. 71, 77–78, 553 A.2d 1135 (1989); *Damora* v. *Christ-Janer,* 184 Conn. 109, 113, 441 A.2d 61 (1981); *Cohn* v. *Dunn,* 111 Conn. 342, 346, 149 A. 851 (1930); see also 2 Restatement (Second), Contracts § 213, comment (a); 3 A. Corbin, Contracts § 573. The rule "provides that '[w]hen two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.' 3 Corbin, Contracts § 573." *Greene* v. *Scott,* 3 Conn. App. 34, 36, 484 A.2d 474 (1984). The rule is premised on the idea that " 'when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme.' " *TIE Communications, Inc.* v. *Kopp,* 218 Conn. 281, 288, 589 A.2d 329 (1991), quoting *Glendale Woolen Co.* v. *Protection Ins. Co.,* 21 Conn. 19, 37 (1851). Whether there is a complete integrated agreement is "to be determined by the court as a question preliminary . . . to application of the parol evi-

dence rule." 2 Restatement (Second), Contracts §§ 209 (2), 210 (3); *Suburban Sanitation Service, Inc.* v. *Millstein,* 19 Conn. App. 283, 287, 562 A.2d 551 (1989).

"The general rule with regard to appeals of this nature is that the judgment appealed from will not be reversed in matters of fact unless it clearly appears to be erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." *Web Press Services Corporation* v. *New London Motors, Inc.,* 203 Conn. 342, 345–46, 525 A.2d 57 (1987). In its memorandum of decision, the trial court stated that "any inaccurate representations of Mr. Zirkus were not material in view of the express provisions of the parties' contract." Thus, the parol evidence rule is not in issue because once the trial court made the determination that the representations were not material nothing to which the parol evidence rule could apply remained. Only where the representations are deemed to be material by the trial court, and the remaining requirements for the admission of parol evidence have been satisfied, will such evidence be admitted. The trial court thoroughly reviewed the sales contract before reaching its conclusion. There is nothing in the record to indicate that the trial court was clearly erroneous in concluding that the representations were not material.

## II

The plaintiffs next challenge the trial court's finding that they failed to meet their burden of proof on the breach of any warranties and the CUTPA claims. They argue that Zirkus' representations relating to the installation of the pool and the manufacturer's warranty constituted express warranties. They further argue that the installation of the pool skimmer breached an implied warranty of merchantability and that that breach and the defendant's failure to provide a bowled

center to the pool, a special deck coolant system, forty-eight hour service, and a transferable prorated warranty satisfy all three requirements for a CUTPA cause of action. We disagree.

"Whether a plaintiff sustains [the] burden of proof is a question of fact for the trier. *Capmar Construction, Inc.* v. *Coyle,* 4 Conn. App. 579, 580, 495 A.2d 1115 (1985). We are limited to an examination of the record to determine if it contains sufficient evidence to support the decision of the trial court. *Northeast Gunite & Grouting Corporation* v. *Chapman,* 20 Conn. App. 201, 203–204, 565 A.2d 256 (1989). This court is entitled to presume that the trial court properly considered all of the evidence that was before it. *Chomko* v. *Patmon,* 19 Conn. App. 483, 563 A.2d 311, cert. denied, 212 Conn. 819, 565 A.2d 539 (1989)." *Dorsey* v. *Mancuso,* 23 Conn. App. 629, 632–33, 583 A.2d 646 (1990), cert. denied, 217 Conn. 809, 585 A.2d 1234 (1991).

## A

### EXPRESS WARRANTY

We next consider the plaintiffs' claim that the court should have found a breach of an express warranty. According to the plaintiffs, the defendant's representative made various oral statements relating to the installation of the pool and a manufacturer's warranty that amounted to an express warranty under General Statutes § 42a-2-313 (1) (a). That section provides that an express warranty is created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain . . . ." Subsection (1) (b) provides that "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods conform to the description."

The plaintiffs bear the burden of proving the existence of an express warranty. Because the question of whether an express warranty exists is one of fact, we will not reverse a court's finding on this matter unless it is clearly erroneous. *Superior Wire & Paper Products, Ltd.* v. *Talcott Tool & Machine, Inc.*, 184 Conn. 10, 17, 441 A.2d 43 (1981). Here, we cannot find that the court's conclusion was clearly erroneous. See *Web Press Services Corporation* v. *New London Motors, Inc.*, supra.

The Uniform Commercial Code recognizes that some statements of sellers are merely "puffing" and do not create express warranties. Drawing the line between puffing and the creation of a warranty is often difficult, but several factors have been identified as helpful in making that determination. See generally J. White & R. Summers, Uniform Commercial Code (2d Ed.) § 9-3. One such factor is the specificity of the statements made. Another factor to be considered in determining whether a statement creates an express warranty is whether it was written or oral, the latter being more likely to be considered puffing. J. White & R. Summers, supra; *Web Press Services Corporation* v. *New London Motors, Inc.*, supra, 352.

We interpret the challenged statements to be more akin to mere "puffing," as opposed to an affirmative fact or promise that can form the basis of a warranty. See *Web Press Services Corporation* v. *New London Motors, Inc.*, 205 Conn. 479, 483, 533 A.2d 1211 (1987). "Such 'favorable comments by sellers with respect to their products are universally accepted and expected in the market place . . . ' and do not give rise to liability. . . ." (Citation omitted.) *Gold* v. *University of Bridgeport School of Law,* 19 Conn. App. 379, 384–85, 562 A.2d 570, cert. denied, 213 Conn. 801, 567 A.2d 832 (1989).

In concluding that there was no express warranty as to the installation of the pool and that there had been no breach of the promise to provide a twenty year prorated limited manufacturer's warranty, the trial court relied on the testimony of all of the witnesses and its review of the sales contract. The defendant presented testimony that it never agreed to any special showcase installation, deck coolant system or service within forty-eight hours. Moreover, the plaintiffs signed a completion certificate after the pool had been installed and they had been afforded the opportunity to inspect the pool. Additionally, a review of the sales contract and the trial testimony demonstrates that the plaintiffs were provided with the requested twenty year prorated warranty from the pool manufacturer and that the warranty was to be honored by the defendant as to subsequent owners of the pool. Under the facts of this case, the trial court's failure to find an express warranty as to the installation of the pool and that there had been no breach of the agreement to provide a manufacturer's warranty cannot be considered clearly erroneous.

## B

### IMPLIED WARRANTIES

The plaintiffs similarly failed to establish the existence of implied warranties. They have pointed to no evidence that would persuade the trial court that the seller had reason to know of the particular purpose for which the goods are required and that they were relying on the seller's skill or judgment; General Statutes § 42a-2-315; or that the goods are not fit for the ordinary purpose for which such goods are used. General Statutes § 42a-2-314. Thus, they have not proven an implied warranty of fitness pursuant to General Statutes § 42a-2-315, nor an implied warranty of merchantability pursuant to General Statutes § 42a-2-314. The

factual conclusions of the trial court were not clearly erroneous. See *Superior Wire & Paper Products, Ltd.* v. *Talcott Tool & Machine, Inc.,* supra.

The testimony revealed that the pool was functional and free of defects, that the skimmer was properly installed and that the pool wall was not corroded or damaged. On the basis of this credible evidence, the trial court concluded that "the subject pool was and is essentially serviceable and functional." The trial court, as the finder of fact, is in the best position to assess the credibility of the witnesses testifying before it. " 'It is the trial court that must determine, in light of its assessment of the legal issues and the credibility of the witnesses, whether a plaintiff has sustained the burden of [proof as to his] claim. We decide only whether the determination of the trial court constituted clear error.' " *Bank of Boston Connecticut* v. *Schlesinger,* 220 Conn. 152, 157, 595 A.2d 872 (1991); *Greenberg, Rhein & Margolis, Inc.* v. *Norris-Faye Horton Enterprises, Inc.,* 218 Conn. 162, 166, 588 A.2d 185 (1991); see also *Dow & Condon, Inc.* v. *Anderson,* 203 Conn. 475, 479–86, 525 A.2d 935 (1987); *Solomon* v. *Aberman,* 196 Conn. 359, 364, 493 A.2d 193 (1985). We find nothing in the record to demonstrate that this finding was clearly erroneous.

## C

## CUTPA

The defendant also claims that the trial court should have found that the defendant's conduct was a violation of CUTPA. General Statutes § 42-110b provides in part that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." It is well settled that in determining whether a practice violates CUTPA, the following criteria are to be employed: " '(1) [W]hether the practice, without necessarily hav-

ing been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].' *Conaway* v. *Prestia,* [191 Conn. 484, 492–93, 464 A.2d 847 (1983)], quoting *FTC* v. *Sperry & Hutchinson Co.,* 405 U.S. 233, 244–45 n.5, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972) . . . ." *McLaughlin Ford, Inc.* v. *Ford Motor Co.,* 192 Conn. 558, 568, 473 A.2d 1185 (1984); see also *Mead* v. *Burns,* 199 Conn. 651, 664–65, 509 A.2d 11 (1986); *Sportsmen's Boating Corporation* v. *Hensley,* 192 Conn. 747, 756, 474 A.2d 780 (1984). Thus, a violation of CUTPA may be established by showing either an actual deceptive practice or a practice amounting to a violation of public policy. See, e.g., *Sportsmen's Boating Corporation* v. *Hensley,* supra.

The "substantial injury" factor is itself subject to a three part test. " 'The independent nature of the consumer injury criterion does not mean that every consumer injury is legally "unfair," however. To justify a finding of unfairness the injury must satisfy three tests. It must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that consumers themselves could not reasonably have avoided.' " *McLaughlin Ford, Inc.* v. *Ford Motor Co.,* supra, 569–70, citing a letter from the Federal Trade Commission to United States Senators Wendell H. Ford and John C. Danforth (Dec. 17, 1980), reprinted in N. Averitt, "The Meaning of 'Unfair Acts or Practices' in § 5 of the Federal Trade Commission Act," 70 Geo. L.J. 225, 291 (1981).

At trial, the plaintiffs attempted to show that Zirkus' statements and the defendant's conduct regarding the installation of the pool skimmer, the failure to provide a bowled center, a special deck coolant system, forty-eight hour service, and a transferable prorated warranty amounted to a CUTPA violation. The trial court disposed of the plaintiffs' claim summarily by finding that the plaintiffs had failed to sustain their burden of proof as to the CUTPA violation. On appeal, the plaintiffs argue that the above conduct satisfies all three requirements needed to prove a CUTPA violation. The plaintiffs present numerous arguments in support of their claim that the defendant's acts offended public policy, were immoral, unethical, oppressive and unscrupulous, and were substantial, none of which merit significant review.

The plaintiffs ask that we overturn the factual findings of the trial court. "Whether a practice is unfair and thus violates CUTPA is an issue of fact." *DeMotses* v. *Leonard Schwartz Nissan, Inc.,* 22 Conn. App. 464, 466, 578 A.2d 144 (1990); see also *Atlantic Richfield Co.* v. *Canaan Oil Co.,* 202 Conn. 234, 238, 520 A.2d 1008 (1987). The question here is whether Zirkus' representations and the defendant's installation of the pool constitute an unfair or deceptive trade practice. See *A. Secondino & Son, Inc.* v. *LoRicco,* 215 Conn. 336, 343, 576 A.2d 464 (1990); *Edart Truck Rental Corporation* v. *B. Swirsky & Co.,* 23 Conn. App. 137, 144–45, 579 A.2d 133 (1990). The trial court determined that, under the facts found, the plaintiffs did not sustain their burden of proving a CUTPA violation. We are warranted in overturning the factual findings of the trial court only when such findings are clearly erroneous in light of the evidence and the pleadings in the record as a whole. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra. After examination of the facts in light of the above criteria, we agree with the trial court that

there is no proper evidentiary support for the plaintiffs' assertion of a CUTPA violation. *Sanghavi* v. *Paul Revere Life Ins. Co.*, 214 Conn. 303, 311-12, 572 A.2d 307 (1990). We find nothing in the record to indicate that the trial court's finding was clearly erroneous.

## III

The plaintiffs' next claim is that the trial court improperly failed to award attorney's fees, disbursements, or punitive damages. This claim merits little discussion in light of our conclusion in part II C of this opinion. It is conceded that these awards are premised on the plaintiffs' CUTPA claim. The moving party must prevail on the CUTPA cause of action before such fees and damages must be awarded. See *Connelly* v. *Housing Authority*, 213 Conn. 354, 360, 567 A.2d 1212 (1990). Because we conclude that the trial court correctly found for the defendant on the CUTPA claim, the plaintiffs' claim for these additional awards is without an anchor.

## IV

The plaintiffs' final claim is that the trial court failed to apply the proper standard for calculating damages. "The general rule of damages in a breach of contract action is that the award should place the injured party in the same position as he would have been in had the contract been performed. *Vespoli* v. *Pagliarulo*, 212 Conn. 1, 3, 560 A.2d 980 (1989); *West Haven Sound Development Corporation* v. *West Haven*, 207 Conn. 308, 317, 541 A.2d 858 (1988); *Danpar Associates* v. *Somersville Mills Sales Room, Inc.*, 182 Conn. 444, 446, 438 A.2d 708 (1980); *Johnson* v. *Healy*, 176 Conn. 97, 105, 405 A.2d 54 (1978); *Bachman* v. *Fortuna*, 145 Conn. 191, 194, 141 A.2d 477 (1958); see also 3 Restatement (Second), Contracts §§ 344 (a), 347 (a) and (b), and comments contained therein." *Rametta* v. *Stella*, 214 Conn. 484, 492-93, 572 A.2d 978 (1990). Where, how-

ever, expectation damages greatly exceed the diminished value of the property, the award of damages is limited to the diminished value of the property. *Levesque* v. *D & M Builders, Inc.,* 170 Conn. 177, 181, 365 A.2d 1216 (1976). "The purpose of this rule is to avoid unreasonable economic waste. *Spera* v. *Audiotape Corporation,* 1 Conn. App. 629, 633, 474 A.2d 481 (1984)." *Marron & Sipe Building & Contracting* v. *Flor,* 22 Conn. App. 689, 707, 580 A.2d 508 (1990).

"*Levesque* involved a buyer who wanted to relocate a house misplaced on a building lot. [The Supreme Court] refused to permit relocation costs of $10,800 to be awarded for breach of contract and warranty, when the original contract price had been $22,600. [*Levesque* v. *D & M Builders, Inc.,* supra,] 182. *Levesque* adopts a rule that limits damages to the diminished value of the building whenever the cost of repairs is dramatically larger than is the difference in value. Id., 180–82. Although the costs of repair may more precisely place the injured party in the same physical position as full performance, policy dictates limitation to diminution of value to avoid unreasonable economic waste." *Johnson* v. *Healy,* supra, 105. In *Johnson,* the plaintiff had sought $27,150 as costs in constructing a new foundation for a house originally purchased for $17,000. In concluding that the proper test for damages was the difference in value between the property had it been as represented and the property as it actually was, the *Johnson* court noted that the price discrepancy between reconstruction cost and contract price was even larger than it was in *Levesque. Barnicoat* v. *Edwards,* 1 Conn. App. 652, 655, 474 A.2d 808 (1984).

Here, the trial court concluded that the defendant's failure to install the plaintiffs' pool with a bowled center constituted a breach of contract. The defendant offered testimony that the cost of providing a bowled

center at the time the pool was installed would have been approximately $200 to $300. The plaintiffs offered evidence that to create a bowled center in the existing pool would cost $5694.78. No evidence was presented regarding the value of the pool with a bowled center and the value of the pool without a bowled center. In this case, the cost of repair was nearly the same as the purchase price of the pool. The award of such damages clearly involves an unreasonable economic waste. *Levesque* v. *D & M Builders, Inc.,* supra. Because the cost of rectifying the defendant's omission is so great in comparison to the cost of the purchase of the pool itself, the proper measure of damages is the diminished value of the plaintiffs' pool. We, therefore, remand the case to the trial court to conduct a hearing to determine the proper award of damages based on the diminished value of the plaintiffs' pool. See *Bleau* v. *Ward,* 221 Conn. 331, 341–43, 603 A.2d 1147 (1992) (*Berdon, J.,* dissenting).

We are cognizant of the trend toward remanding a case for a new trial as to liability as well as damages; *DeLaurentis* v. *New Haven,* 220 Conn. 225, 268, 597 A.2d 807 (1991); *Fazio* v. *Brown,* 209 Conn. 450, 455–58, 551 A.2d 1227 (1988); *Malmberg* v. *Lopez,* 208 Conn. 675, 681–82, 546 A.2d 264 (1988); and also note that an order restricting a new trial to specific issues is the exception, not the rule. *Fazio* v. *Brown,* supra, 455; *Niles* v. *Evitts,* 16 Conn. App. 696, 699, 548 A.2d 1352 (1988). Such restriction is not warranted where the two issues are "inextricably interwoven." See *DeLaurentis* v. *New Haven,* supra; *Sauerwein* v. *Bell,* 17 Conn. App. 697, 704–705, 556 A.2d 613, cert. denied, 211 Conn. 804, 559 A.2d 1158 (1989). Here, however, the two issues are not "inextricably interwoven." We see no reason why this case should not be remanded for a determination as to the appropriate measure of

damages only. See *West Haven Sound Development Corporation* v. *West Haven,* 201 Conn. 305, 514 A.2d 734 (1986).

The judgment is reversed as to the award of damages only and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.