[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE; MOTIONS TO STRIKE (#167, 168, 170).
On November 24, 1992, the plaintiff, Torrington Country Club, instituted this product liability action to recover damages for the alleged degradation of its clubhouse roof. In June 1985, the plaintiff contracted with Newfield Construction Inc. ("Newfield") to reconstruct the plaintiff's clubhouse. The construction was allegedly performed according to the specifications of the plaintiff's architect, Kaestle Boos Associates CT Page 6385 Limited ("Kaestle Boos"). The plaintiff alleges that the products used by Newfield in the reconstruction project were defective and have seriously degraded, creating an unreasonably dangerous condition of the clubhouse roof. The plaintiff alleges further that it has been forced to spend considerable funds in restoration costs. The wood products which allegedly degraded were manufactured by or treated with products manufactured by defendants Ply Gem Inc., d/b/a Hoover Wood Products ("Ply Gem") and Osmose Wood Preserving Inc. ("Osmose").
By writ, summons and complaint dated November 24, 1992, the plaintiff instituted this action against defendants Newfield, Ply Gem, and Osmose, claiming damages under the Connecticut Product Liability Act, General Statutes § 52-272 et seq. In a nine count amended third party complaint, dated October 6, 1993, Newfield impleaded Truss Tech Inc. ("Truss Tech"), Iffland Lumber Co. ("Iffland"), and Kaestle Boos. According to the allegations in Newfield's third party complaint, Truss Tech and Iffland supplied defective wooden trusses and lumber, respectively, to Newfield for its reconstruction project. Counts one, two, and three of Newfield's third party complaint are addressed to Truss Tech and claim common law indemnification, contribution, and damages for breach of warranty pursuant to General Statutes § 42a-2-715(2)(B), respectively. Counts four, five, and six assert the same claims against Iffland. Counts seven, eight, and nine are directed against Kaestle Boos and claim common law indemnification, negligent misrepresentation and breach of implied warranty, respectively.
The three third party defendants have filed motions to strike various counts of Newfield's third party complaint on the ground that they fail to state a claim upon which relief can be granted. In motion (#168) Truss Tech has moved to strike counts one, two, and three. In supplemental motion to strike (#170), Iffland has moved strike counts four, five, and six. In motion (#167), Kaestle Boos has moved to strike count seven. Pursuant to Practice Book § 155, all parties to the motion have filed memoranda of law in support of their respective positions. CT Page 6386
A motion to strike challenges the legal sufficiency of a pleading, or any count thereof to state a claim upon which relief can be granted. Practice Book § 152; Ferrymanv. Groton, 212 Conn. 138, 142, 561 A.2d 432 (1989). In deciding on a motion to strike, the court must "construe the complaint in the manner most favorable to sustaining its legal sufficiency." Michaud v. Warwick, 209 Conn. 407,408, 551 A.2d 738 (1988). The court is limited the facts alleged in the challenged pleading; King v.Board of Education of Watertown, 195 Conn. 90, 93,486 A.2d 1111 (1985); and must admit the truth of all facts well pleaded. Mingachos v. CBS Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). "The sole inquiry at this stage is whether the plaintiff's allegations, if proved, state a cause of action." Levine v. Bess and Paul Sigel HebrewAcademy of Greater Hartford, Inc., 39 Conn. Sup. 129,132, 471 A.2d 679 (1983).
I. Indemnification
Counts one, four, and seven of Newfield's third party complaint set forth claims for common law indemnification against the three third party defendants. Indemnification is a claim for reimbursement in full from one on whom primary liability is claimed to rest.Kyrtatas v. Stop Shop, Inc., 205 Conn. 694, 701,535 A.2d 357 (1988). "Ordinarily there is no right to indemnity or contribution between joint tortfeasors."Kaplan v. Merberg Wrecking Corporation, 152 Conn. 405,412, 207 A.2d 732 (1965). However, in Malerba v. CessnaAircraft Co., 210 Conn. 189, 554 A.2d 287 (1989), our Supreme Court recognized that common law indemnification is a viable cause of action in the context of product liability claims for a third party plaintiff where all potential defendants are not parties to the suit.[1] Id., 198-99.
A party "is entitled to indemnification, in the absence of a contract to indemnify, only upon providing that the party against whom indemnification is sought either dishonored a contractual provision or engaged in some tortious conduct." (Citation omitted.) Burkert v.Petrol Plus of Naugatuck, Inc., 216 Conn. 65, 75,579 A.2d 26 (1990). When a claim for indemnification is grounded in tort, reimbursement is warranted only upon CT Page 6387 proof that the injury resulted from the "active or primary negligence" of the party against whom reimbursement is sought. Kaplan v. Merberg WreckingCorporation, 152 Conn. 405, 415, 207 A.2d 732 (1965). Such proof requires a plaintiff to plead and establish four essential elements:
 (1) that the other tortfeasor was negligent; (2) that his negligence rather than the plaintiff's, was the direct and immediate cause of the accident and injuries; (3) that he was in control of the situation to the exclusion of the plaintiff; and (4) that the plaintiff did not know of such negligence, had no reason to anticipate it, and could reasonable rely on the other tortfeasor not to be negligent.
Id., 416.
In Atkinson v. Berloni, 23 Conn. App. 325,580 A.2d 84 (1990), our Appellate Court added a fifth element to a claim for indemnification. "We conclude that, in order to be entitled to indemnification from a joint tortfeasor, the party seeking indemnification must establish that the alleged indemnitor owed that party a duty based on an independent legal relationship. " Id., 328.[2]
Count one of Newfield's third party complaint is directed against Truss Tech. Newfield alleges, in pertinent part:
 4. Said trusses, alleged to be defective by Torrington Country Club were supplied to Newfield by Truss Tech pursuant to a contract of sale. . . .
 6. The contract of sale constitutes an independent legal relationship between Newfield and Truss Tech capable of supporting a common law claim for common law indemnity.
 7. The trusses were installed by Newfield without substantial alteration or changes. Therefore, Truss-Tech CT Page 6388 was in control of the "situation" to the exclusion of Newfield Construction Inc. Any defective condition existing in said trusses came into existence prior to their coming into Newfield's control, and while they were in exclusive control of Truss Tech.
 8. Any defect in the trusses were the direct proximate result of Truss Tech's active negligence in one or more of the following ways: . . . .
(Newfield's Amended Third Party Complaint, October 6, 1993.).
The allegations directed against Iffland in count four of Newfield's third party complaint are virtually identical to those stated against Truss Tech in count one. Accordingly, the court will consider the legal sufficiency of both counts together.
In support of their motions to strike, Iffland and Truss Tech argue, inter alia, that they are retailers and therefore, as a matter of law, they could not have been in "exclusive control" of the situation. The "situation" in the present product liability case is the use and installation of the allegedly defective wood products. Newfield has alleged that Iffland and Truss Tech placed the defective products in the stream of commerce and that the products were installed by Newfield without substantial alterations or changes. Admitting the truth of these allegations, Iffland and Truss Tech could be exclusively responsible for the use and installation of the defective products which subsequently caused the degradation and damage to the plaintiff's clubhouse roof.[3]
Moreover, this court is unwilling to conclude, as a matter of law, that the parting with possession of the products by Iffland and Truss Tech prevents them from being in exclusive control of the situation. See Bernardv. Marriott Corporation, 6 Conn. L. Rptr. 406 (1992, Rush, J.) (The court refused to strike a third party complaint against General Electric for allegedly placing a defective and dangerous heat lamp in the stream of commerce.) Accordingly, in counts one and four of its CT Page 6389 third party complaint, Newfield has sufficiently alleged that Iffland and Truss Tech were in "exclusive control" of the situation to maintain its actions for common law indemnification.[4]
Iffland and Truss Tech argue further that Newfield's claims for common law indemnification should be stricken because Newfield has failed to allege an independent legal relationship as is required by Atkinson v. Berloni, supra. Newfield has pled that the allegedly defective lumber and trusses were provided by Truss Tech and Iffland pursuant to contracts of sale between the respective parties. By alleging a contractual relationship between the parties, Newfield has sufficiently alleged an independent legal relationship.Id., 327-28; Maccarone v. Hawley, 7 Conn. App. 19, 23-24,507 A.2d 506 (1986); see also Schofield v. BicCorporation, 3 Conn. L. Rptr. 228 (1991, Fuller, J.). For the foregoing reasons, the motions to strike counts one and four are denied.
In count seven of its third party complaint, Newfield states a claim for common law indemnification against Kaestle Boos, the plaintiff's architect. Kaestle Boos also moves to strike on the ground that it was not in control of the situation to the exclusion of the third party plaintiff. see [See] Kaplan v. Merberg, supra.
Newfield has alleged that Kaestle Boos was in exclusive control of the situation because it alone had control over the specifications and supervision of the construction site. (Count 7, Paragraph 8, Newfield's third party complaint.) However, a motion to strike does not admit legal conclusions; Alarm Applications Co. v.Simsbury Volunteer Fire Co., 179 Conn. 541, 545,427 A.2d 822 (1980); and such a motion should be granted where a complaint alleges legal conclusions unsupported by facts.Mora v. Aetna Life Casualty Ins. Co., 13 Conn. App. 208,211, 535 A.2d 390 (1988). Newfield has failed to allege facts that could prove that Kaestle Boos was in control of "the situation" to the exclusion of Newfield. This court is unwilling to conclude that Kaestle Boos, as the architect of the reconstruction project, had a greater degree of control over the use and installation of the allegedly defective products then Newfield did, as CT Page 6390 general contractor. Unlike the factual circumstances with Iffland and Truss Tech where the manufacturers could be directly responsible for the use of the defective products, Kaestle Boos' involvement can only be categorized as secondary. Accordingly, Kaestle Boos' motion to strike count seven of Newfield's amended third party complaint is granted.
II. Contribution
In counts two and five of Newfield's third party complaint, Newfield asserts claims for contribution against Truss Tech and Iffland, respectively. Truss Tech and Iffland have moved to strike these counts on the ground that Newfield has no right to contribution.
"Contribution involves a claim for reimbursement of a share of a payment necessarily made by the claimant which equitably should have been paid in part by others." (Citations omitted.) Malerba v. Cessna Aircraft, supra, 195. Connecticut courts have consistently held that there is no right to contribution at common law. Gomeau v.Forrest, 176 Conn. 523, 409 A.2d 1006 (1979). However, the products liability statute, § 52-572m et seq., has abrogated the common law rules of indemnification and contribution in the context of product liability suits.Kyrtatas v. Stop Shop, Inc., supra, 698-702.
The language of General Statutes § 52-572o(e) indicates that a party may bring a contribution action only after either settlement or verdict. However, the propriety of a third party claim for contribution resulting from a pending first party product liability claim was directly addressed by our Supreme Court inMalerba v. Cessna Aircraft, supra. The court "harmonized" the apparent inconsistencies between General Statutes § 52-102a, § 52-572o(e), and § 52-577a(b) and held that a defendant in a pending product liability action may properly institute a contribution action by impleading the prospectively liable third party as authorized by § 52-102a and § 52-577a(b). Id. 195-96. In the present case, Newfield has properly impleaded Truss Tech and Iffland. Therefore, Newfield has the right to seek contribution from these prospectively liable third parties. Accordingly, the motions to strike counts two CT Page 6391 and five of Newfield's third party complaint are denied.
III. Breach of Warranty
In counts three and six, Newfield asserts claims for breach of warranty against Truss Tech and Iffland, respectively, pursuant to General Statutes § 42a-2-715(2)(B). Iffland has moved to strike count six on the ground that the Product Liability Act is the "exclusive remedy" for claims against product sellers. In its memorandum of law in support of its motion to strike, Truss Tech concedes "that the proper remedy for plaintiff's alleged damages was a separate UCC action."
While the Product Liability Act "is the exclusive remedy for claims against product sellers. . . . it is intended only for claims falling within its scope. . . ."Burkert v. Petrol Plus of Naugatuck, Inc., 216 Conn. 65,73, 579 A.2d 26 (1990); citing Winslow v. Lewis-Shepard,Inc., 212 Conn. 462, 471, 562 A.2d 517 (1989). Claims arising outside the scope of the Act, however, may be asserted as common law actions or pursuant to alternative statutory provisions. Lopez v. General MotorsCorporation, Superior Court, Judicial District of New Haven, Docket # 287165, (May 20, 1993, Gray, J.); citingBurkert v. Petrol Plus of Naugatuck, Inc., supra. General Statutes § 52-572n(c) provides:
 As between commercial parties, commercial loss covered by a product is not harm and may not be recovered by a claimant in a product liability claim. An action for commercial loss caused by a product may be brought only under, and shall be governed by, Title 42a, the Uniform Commercial Code.
In BRT Corporation v. New England Masonry Co.,5 Conn. L. Rptr. 205 (1991, Pickett, J.), this court defined commercial loss by stating that insofar as the general contractor "seeks damages for economic costs derived from labor, operating costs, lost profits, and liability for damages to the individual building owner's roof, such damages represent commercial loss as is stated in [the Product Liability Act] . . . ." Id.
CT Page 6392
In counts three and six of its third party complaint, Newfield has asserted claims for commercial loss against Truss Tech and Iffland, respectively. These claims are properly brought under the Uniform Commercial Code. see [See] Thivierge v. Fortress Scientific Limited,9 Conn. L. Rptr. 259, 262-65 (1993, Teller, J.); Massaro v.AMF Mares, 2 Conn. L. Rptr. 660 (1990, Demayo, J.); Lopezv. General Motors Corporation, supra. A third party plaintiff attempting to establish a cause of action for breach of warranty must satisfy numerous pleading requirements. see [See] e.g. Vezina v. Nautilus Pools, Inc.,27 Conn. App. 810, 816-17, 610 A.2d 1312 (1992). Iffland and Truss Tech, however, have not raised the issue of these requirements, therefore, the court will not question their legal sufficiency. see [See] Meredith v. PoliceCommission, 182 Conn. 138, 140, 438 A.2d 27 (1980). The motions to strike counts three and six are denied.
In summary, the motions to strike counts one, two, three, four, five, and six of Newfield's third party complaint are denied. The motion to strike count seven is granted.
PICKETT, J.