[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs seek an award under the Connecticut Unfair CT Page 12663 Trade Practices Act, General Statutes § 42-110 et. seq. (CUTPA). They claim the defendant, a lawyer,[1] engaged in deceptive and trade practices while representing them in various financial, probate, and trust matters. The defendant contends that CUTPA does not apply to the plaintiffs' claims and, if it does, that the plaintiffs have not proven a violation of the act. After reviewing the plaintiffs claims, the court concludes that an award of attorney's fees may be appropriate for the plaintiff's recovery in connection with the jury award of $137,853.00. Because the defendant objects to proof of attorney's fees by way of affidavit, an evidentiary hearing must be scheduled for the final resolution of this issue.
The plaintiffs are Henrietta M. Pavone and her two daughters, Pamela Pavone and Leslie Pavone. They presented evidence on their CUTPA claims at the time they presented evidence on other claims which were recently resolved by a jury. The parties agreed the CUTPA claims would be decided by this court. See AssociatedInvestment Co. Ltd Partnership v. Williams Associates IV, 230 Conn. 148,161-62 (1994).
The plaintiffs allege that Mr. McHugh handled legal matters for Henrietta M. Pavone, her two daughters, the Estate of Peter Pavone, Jr., and two trusts. They further allege Mr. McHugh was a co-trustee of one of the two trusts and custodian of assets owned by the plaintiffs, the estate, and the trusts.
With respect to Mr. McHugh's conduct, the plaintiffs allege that he failed to pay real estate taxes on property in Newtown, Connecticut, in a timely manner; that he failed to file federal estate tax returns with the Internal Revenue Service; that he failed to file an inventory with the probate court; that he failed to account in a timely and adequate manner for the funds which he held for the plaintiffs; that he disbursed legal fees from the plaintiffs' funds without submitting bills for his services; that the harm he caused the plaintiffs exceeded the fees he charged; that he gave a real estate appraiser an improper description of property in Northampton, Massachusetts, thereby causing the plaintiffs to lose money when the property was sold; that he failed to account in a timely manner for all the money he received from the sale of Mrs. Pavone's house and failed to pay interest to her for loss of use of the money; that he invested the plaintiffs' funds in the stock market without their knowledge or authorization and did so in a speculative manner and in his and his wife's names; and, finally, that he did not turn over to the plaintiffs all of CT Page 12664 their funds.
The plaintiffs assert nine causes of action in the complaint: negligence, breach of fiduciary duties, breach of an agreement to provide legal services, conversion (two counts), fraud and deceit, violation of CUTPA, misappropriation of funds, and an action for an accounting of all the funds which the defendant held for the plaintiffs. By the time the case was given to the jury for decision, the issues had become more focused. The plaintiffs withdrew the claims for conversion, fraud and deceit, misappropriation, and accounting. The jury was asked to resolve questions of fact surrounding four financial claims.
Because the plaintiffs' CUTPA claims incorporate the claims submitted to the jury, the court will briefly review the claims decided by the jury. The first and second claims were based on legal malpractice. The first claim was for interest on $51,276.00. When Mr. McHugh represented Mrs. Pavone in the sale of her house, he turned over to her all of the sale proceeds except $51,276.00. He turned over the $51,276.00 sometime after he stopped representing her on all matters. At trial, he explained his failure to turn over the money in a timely manner was caused by a bookkeeping error. In response to interrogatories, the jury found that the plaintiffs had proven the standard of care required in connection with Mr. McHugh's handling of the $51,276.00, that he violated the standard, and that the violation was a substantial factor in causing the plaintiffs to loose $14,100.00 in interest. The jury also awarded prejudgment interest on this claim.
The second claim submitted to the jury was for the interest the plaintiffs would have been able to earn had the proceeds of three life insurance policies been paid to them earlier by the insurance companies. On this claim, the jury found that Mr. McHugh had not violated the standard of care required of attorneys in such matters.
The third claim was for compensation for losses incurred by Mr. McHugh while investing in the stock market with Pavone family funds. In response to interrogatories, the jury found that Mr. McHugh held funds in the capacity of a trustee or fiduciary, that he violated his trust or fiduciary duties, and that there was a causal connection between a violation and the losses claimed by the plaintiffs. Mr. McHugh denied wrongdoing and, in addition, he presented a defense based on the equitable doctrine of estoppel. In response to interrogatories on this defense, the jury found that CT Page 12665 Mr. McHugh had shown that Mrs. Pavone did or said something which was intended to make Mr. McHugh believe he could invest funds in the manner which he did. The jury also found that Mr. McHugh was influenced by what Mrs. Pavone did or said. The jury, however, did not find all the elements of the defense proven. On this claim, the jury awarded the plaintiffs $137,853.00 as damages for loss of principal. The jury was given the opportunity to award prejudgment interest on this claim but did not do so.
The fourth financial claim submitted to the jury was for the return of legal fees charged by Mr. McHugh. The amount Mr. McHugh; charged the plaintiffs was $219,631.86. Because a fiduciary relationship existed between Mr. McHugh and the plaintiffs, the court placed on Mr. McHugh the burden of persuading the jury by clear and convincing evidence that the disbursements for fees were fair and reasonable. In response to interrogatories, the jury found that Mr. McHugh had shown by clear and convincing evidence that the fees charged were fair and reasonable. The plaintiffs did not prevail on this claim.
The plaintiffs now seek an award for compensatory damages, punitive damages, and attorney's fees under the Connecticut Unfair Trade Practices Act. They claim the practice of law by an attorney constitutes "trade or commerce" which is regulated by CUTPA. They claim Mr. McHugh committed unfair and deceptive trade practices by (1) investing Pavone funds in the stock market in an improper manner and (2) paying himself attorney's fees from Pavone funds without billing the plaintiffs. For compensatory damages, the plaintiffs seek (a) $9,679.00 as reimbursement for the legal fees the defendant charged when making improper stock transactions, (b) $1,513.00 as reimbursement for the legal fees the defendant charged when consulting with a stock broker about the improper stock transactions, and (c) $12,987.71 as reimbursement for the legal fees which the defendant disbursed to himself from Pavone funds on October 8, 1987. For punitive damages, the plaintiffs seek $162,032.71, which is based on the sum of their present claims for compensatory damages ($24,179.71) and the compensatory damages awarded by the jury for the investment losses on the stock market ($137,853.00). For attorney's fees, they seek an award in accordance with the costs and fees set forth in an affidavit attached to their post-trial brief.
The first issue to be resolved is whether the defendant's conduct is regulated by CUTPA. While the Connecticut Supreme Court has held CUTPA applies to some aspects of the profession of law, CT Page 12666Heslin v. Connecticut Law Clinic of Trantolo Trantolo, 190 Conn. 510,461 A.2d 935 (1983), it has not held that CUTPA applies to all aspects of the profession. In Jackson v. R.G. Whipple, Inc.,225 Conn. 705, 627 A.2d 374 (1993), Justice Berdon in a concurring opinion observed that CUTPA should only apply to "the entrepreneurial or commercial aspects of the profession of law. The noncommercial aspects of lawyering — that is the representation of the client in a legal capacity — should be excluded for public policy reasons." Id., at 731; see Larsen Chelsey Realty Co. v.Larsen, 232 Conn. 480 (1995) at f.n. 19. The defendant's conduct when investing in the stock market did not involve giving legal advice or planning legal strategy. The investment activities are subject to CUTPA. How the defendant determined the price of his legal services and how he collected his charges relates to the entrepreneurial aspects of the legal practice and is also subject to CUTPA. See Short v. Demopolis, 691 P.2d 163 (1984).
The next issue to be resolved is whether Mr. McHugh committed an unfair or deceptive trade practice when investing in the stock market or when determining and collecting his fees. The criteria to be employed in determining whether a practice violates CUTPA are reviewed in Vezina v. Nautilus Pools, Inc., 27 Conn. App. 810,610 A.2d 1312 (1992).
When Mr. McHugh invested Pavone funds in his and his wife's name, he may well have engaged in an unfair or deceptive trade practice. The plaintiffs', however, have already been awarded compensatory damages of $137,853.00 for the losses resulting from the improper investments. They do not seek compensatory damages under CUTPA for investment losses. With respect to Mr. McHugh's legal fees, the jury found that Mr. McHugh proved by clear and convincing evidence that the fees were fair and reasonable. The plaintiffs now attempt to limit this finding by making a distinction between fair value for services and charges for improper services. These issues were litigated before the jury. This court now concludes that what Mr. McHugh charged was reasonable under all the circumstances. See Rule 1.5 of the Rules of Professional Conduct.
The plaintiffs seek punitive damages. The criteria for awarding punitive damages are as follows:
 "Awarding punitive damages and attorney's fees under CUTPA is discretionary; General Statutes 42-110g (a) and (d). . . . `In order to award CT Page 12667 punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights. . . . In fact, the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence. Triangle Sheet Metal Works. Inc. v. Silver, 154 Conn. 116, 128, 222 A.2d 220 (1966).'" Gargano v. Heyman, 203 Conn. 616, 525 A.2d 1343 (1987). (citations omitted)
The court concludes that an award of punitive damages is not appropriate.
The plaintiffs seek attorney's fees. Such an award is discretionary with the court, provided a CUTPA violation has been proven. The court is of the opinion that CUTPA may have been violated when Mr. McHugh invested Pavone funds in the names of Mr. Mrs. McHugh. Accordingly, the plaintiffs may be entitled to an award of attorney's fees in connection with their recovering the loss of principal, i.e. the $137,853.00 jury award. The factors for calculating reasonable attorney's fees in CUTPA litigation are set forth in Stieger v. J.S. Builders, Inc., 39 Conn. App. 32, 39
(1995).
Before this court may consider awarding attorney's fees, an evidentiary hearing is necessary. The parties should consult with the clerk of the court to schedule a hearing at which the parties may offer evidence and arguments on whether attorney's fees should be awarded for recovering $137,853.00 and, if so, how much should be awarded.
THIM, JUDGE