[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON ON DEFENDANT'S MOTION FOR SUMMARYJUDGMENT
CT Page 8985
In this case the plaintiff contracted with the defendant to have a residential alarm system installed in her house written contract was entered into on October 3, 1990 On October 25, 1993 the complaint in this matter was served on the defendant. The complaint has three counts. The first count is for breach of contract; the second count is for negligence; and the third count alleges a violation of CUTPA.
In the first count, it is alleged the contract was breached in one or more of three ways: moldings were removed from windows and were not replaced in the same condition in which they were found; moldings were damaged then not repaired or replaced; holes were drilled in the roof allowing water to enter the walls. The breach is alleged to have caused structural damage to the home and personal injuries to the plaintiff.
The second count alleges the defendant acted negligently in installing the alarm system by drilling holes through the roof and allowing water to enter the walls. It is further alleged that this circumstance was not discoverable until the damage became apparent in January of 1992. The damages previously referred to have also resulted from the defendant's negligence.
The third count alleges a CUTPA violation. The plaintiff refers to the same acts of the defendant referred to in the breach of contract count, alleges that the defendant has adopted a method and business practice of installing alarm systems in a negligent and deficient manner which constitutes an unfair trade practice. The plaintiff further alleges that as a result of this practice she suffered structural damage to her home and the personal injuries previously alleged — loss of a sense of taste and smell, flu-like symptoms, stress to her immune system resulting in allergies to mold, sinus infections, and aggravation to such pre-existing conditions.
The defendant has filed a motion for summary judgment addressed to each of the three counts:
First Count:
 (a) Contract required plaintiff to notify defendant within five days of CT Page 8986 installation as to errors in the installation. Upon expiration of five days installation deemed to be satisfactory. (Par. 12 of contract).
 (b) Plaintiff limited in scope of her recovery to liquidated damage clause to maximum of $250. (Par. 5 of contract).
Second count:
 Section 52-584 of the general statutes precludes negligence claim after October 5, 1993; negligence claim barred by failure to bring it within maximum three year period.
Third Count:
 Plaintiff has failed to set forth a viable cause of action under Connecticut Unfair Trade Practices Act, § 42-110a, et seq.
The standards to be applied in deciding a motion for summary judgment are well known. If, after examining the briefs, documents and affidavits submitted, the court concludes that there is a genuine issue of material fact, it cannot decide it and thereby deprive the nonmoving party of its right to a trial. If no such genuine issue of material fact exists summary judgment was created so that such claims be removed from the trial docket.
(1)
Contract interpretation is generally a question of fact.Gurliacci v. Mayer, 218 Conn. 531 567 (199 ); Bowman v. 144Central Avenue Apartments, Inc., 203 Conn. 246, 257 (1987). The determination of what the parties meant to encompass in their contract is a question of law, however, where there is a statutory warranty or definitive contract language. Bead ChainMfg. Co. V. Saxton Products, Inc., 183 Conn. 266 274-275 (1981)
(a)
Paragraph 12 of the contract says "[a]ny error or omission in the construction or installation of the system must be called CT Page 8987 to the attention of the company in writing within five (5) days after completion of installation. Upon the expiration of said five (5) days, the installation shall be deemed totally satisfactory to and accepted by buyer."
Is this contract language definitive in the sense that it is clear that breach of contract claim made here would be precluded because the alleged breaches were not brought to the defendant's attention within the five day period?
Referring to the entire phrase, "error or omission in the construction or installation" of the alarm system could easily be taken to mean an error or omission that causes the system to be non-operable or be referring to a situation where the system is not located in an area agreed upon or where the system actually installed does not have all the features agreed upon. See first page of contact where "location" of system is specified and "equipment list" is referenced with space left below these designations where parties can list locations for alarm and type of alarm and, apparently, features of the system have agreed to.
It might be helpful to break the phrase down to its component parts. "Omissions" in the construction or installation of an alarm system cannot refer to the actual damage caused to the structure of a house while the system is being installed.
What is "error in the construction or installation of the system"? "Construction of the system" refers to the alarm system itself and the manner in which it operates. "Error" in the installation of the system is somewhat ambiguous. It could mean an "error" in the installation that led to damage to the house, but it could also just mean that type of "error" which would not cause the alarm system to work or operate in the manner agreed upon.
It is also true that this is a form-written contract prepared by the company that makes a profit from the installation of alarm systems and deals often with private homeowners who may be unsophisticated not only regarding the interpretation of documents but also in ascertaining the possibility of damage to their home that might be caused by installation of these systems. Under these circumstances more explicit contract language is necessary than that used here. It would not have been peculiarly difficult for this contract to have said, for example, that "any damage to the structure of the house caused by any negligent or CT Page 8988 improper installation of the system must be brought to the company's attention within five days."
The court cannot say that paragraph 12 of this contract precludes the claims being made here.
(b)
The defendant also argues that the liquidated damage clause is proper and legal and that any damage claim must be limited to the $250 maximum provided for in the contract. It is of course true that correctly drawn liquidated damage clauses under appropriate circumstances are legally binding. Norwalk DoorClosure Co. v. Lock Screw Co., 153 Conn. 681, 686 (1960).
Assuming the defendant is correct in its position that the liquidated damage clause is applicable to the claims made here, it is difficult to understand how that would entitle it to summary judgment. That is, if the damages are properly so limited that does not mean in the appropriate cause the plaintiff would not be entitled to a recovery up to the $250 maximum. If that's the case, how can the court grant summary judgment? It's not an argument going to the issue of liability as such, just the amount of liability is involved.
In any event, leaving this aside, which seems a lot to leave aside, the court does not accept the defendant's interpretation of the applicability of the clause to the facts and circumstances of this case.
Paragraph 5 of this contract must be read in its entirety. It is clear to the court that the purpose of this clause was specifically to limit the liability of the defendant if the alarm system did not operate correctly and the failure of the system led to great loss of property or injury to persons. The paragraph reads that the defendant company makes "no guarantee or warranty including any implied warranty of merchantability or fitness that the equipment or services supplied will avert or prevent occurrences or consequences therefore which the system or service is designed to detect or avert." In a previous sentence, it says that "it is agreed that Company (defendant) is not an insurer; that insurance, if any, shall be obtained by the subscriber; that the payments provided for herein are based solely on the value of the service as set forth herein and are unrelated to the value of the subscriber's property or the CT Page 8989 property of others located on subscriber's premises." In language attempting to justify the need for such a clause, the contract language goes on to discuss how difficult it would be to predict any actual loss then goes on to list circumstances in subparagraphs (a) through (e) which refer to factors that relate to losses caused of a type the alarm system was designed to avert and certainly have nothing to do with claims of damage to the home's structure because of negligent installation — thus it is noted that the fire department or police response time might be uncertain or delayed, the uncertain nature of occurrences which might happen to the subscriber and which the system was designed to protect, the difficulty in ascertaining what portion of the loss can be attributable to the mere fact the alarm did not function.
Obviously a liquidated damage clause to protect companies that install alarm systems is appropriate in order to limit their liability if property is stolen or people are injured where the alarm system fails. This industry probably could not survive if such clauses were not permitted or the costs of installation would have to be prohibitive so that these companies or their insurers could cover the risks. The subscribers as a class cannot complain because they receive the benefit of lower installation costs such liquidated damage clauses help to bring about. Several cases have upheld the validity of such clauses when damage was caused because of the failure of the system to operate. Benjamin, et al. v. Detect, Inc.,16 Conn. L. Rptr. 107, 108 (1996) (home destroyed by fire); Convenient PetroleumCorp. v. Sonitrol Communications Corp., 6 Conn. L. Rptr. 556
(1992) (burglary where alarm system didn't function); HanoverInsurance Co. v. American District Telegraph Co.,5 Conn. L. Rptr. 324 (1991) (wrong police department notified, apparently a burglary involved). Also see Hunter's consignment, Inc. V.Sonitrol, 12 Conn. L. Rptr. 687 (1994).
The language of this clause read in its entirety limits the operation of the clause to claims of loss of property or injury to person resulting from the failure of the alarm system to function. The court can conclude as a matter of law that the definitive contract language used here would not extend the ambit of this clause to damage claims arising out of damages caused to the house itself because of the improper way the system was Installed.
Even if the court is incorrect in treating this issue as a CT Page 8990 question of law pursuant to Bead Chain Mfg. Co. v. SaxtonProducts, Inc., supra, the issue then would be a question of fact incapable of being resolved by way of summary judgment.
(2)
The defendant also claims the negligence count is barred by the applicable statute of limitations, § 52-584 of the General Statutes. That statute in relevant part states:
 "No action to recover damages for injury to the person or to real or personal property caused by negligence or by reckless or wanton misconduct or by malpractice of a physician, surgeon or dentist, podiatrist, chiropractor, hospital or sanitarium shall be brought but within two years from the date when the injury is sustained or discovered and except that no such action may be brought more than three years from the date of the act or omission complained of. . . ."
In this case the defendant did work on this house according to the pleadings on October 3, 1990; after the plaintiff made complaints about the work performed, the plaintiff came back on October 27, 1990. Suit was not brought until October 25, 1993. The court in Catz v. Rubenstein, 201 Conn. 39, 44 (1986) indicates that for the purposes of § 52-584 injury occurs when a party suffers "actionable harm" and a "necessary ingredient" of "actionable harm" is a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff. In an affidavit the plaintiff states that "I did not become aware of any personal injuries that I sustained as a result of the negligent installation of the alarm system until January 1992." This would save the claim for injury from being barred by the statute but this statement is quite conclusory although the defendant does not attack the statement on that basis. I suppose a person can be assumed to be aware of her own bodily condition; also, such a response must be read in light of the allegations of the complaint and her assertion in that document that she suffered physical disabilities as a result of the negligent conduct of the defendant. The plaintiff's deposition is not very enlightening on the issue of times or dates. The plaintiff said she went to her regular doctor for sinus infections some six or seven months after the alarm system was installed. She then CT Page 8991 apparently continued to see this doctor several times with recurring infections. She finally went to an allergist and got allergy shots which improved her condition. At some point she testified she started thinking there was a connection between her physical complaints and the moldy conditions caused allegedly by the defendant's negligent work, the allergist has told her she was allergic to mold. The deposition is not clear as to exactly when the plaintiff made the causal connection but the deposition does not directly impeach the date of the causal connection given in the plaintiff's affidavit.
The court is reluctant to grant the defendant's motion given the state of the record before it, especially since the defendant has the burden of proof on this defense. But because of the confusion on this issue, the court is not in any way holding that its position on this issue should be treated as "the law of the case." It is certainly open to the defendant at trial to try to establish that the plaintiff made or should have reasonably made the causal connection between her physical disabilities and the defendant's actions within a year after the latter's work and over two years before suit was brought.
But the defendant does raise another issue which the court considers quite difficult. The plaintiff's deposition indicates that the plaintiff discovered that some damage was caused to her home by the allegedly negligent actions of the defendant. A hole was made in the roof through which water leaked into the house. A possible interpretation of the transcript is that the plaintiff noticed this damage within one year of the last work done on the plaintiff's home by the defendant on October 27, 1990, that is over two years before suit was initiated.
In Davies v. Krasna, 535 P.2d 1161, 1168, (Cal. 1975), the court notes that under California law "the limitation clock only begins to run on certain causes of action when the injured party discovers or should have discovered the facts supporting liability." The court goes on to hold that its statute does not begin to run then until the plaintiff possesses "a true cause of action" — our "actionable harm". A true cause of action as defined by Davies as "a point where the plaintiff is entitled to a legal remedy not merely a symbolic judgment as an award of nominal damages." Keeping these observations in mind, the problem arises when the language of Burns. V. Hartford Hospital,192 Conn. 451 (1984) is examined. Burns is admittedly a medical malpractice case but the court notes that suit under § 52-584 must CT Page 8992 be brought within two years of discovering an injury. The court then goes on to say: "In this context an injury occurs when a party suffers some from of actionable harm. The harm need not have reached its fullest manifestation before the statute begins to run." Id. P. 460.
If the plaintiff could have brought a negligence action against the defendant before October 25, 1991 for the damage to her real property, why should she not be precluded from making a claim for physical injury due to the alleged negligence merely because the causal connection between the negligence and the physical injury was not made January 1992? Under Burns shouldn't the statute begin to turn when some injury to the real property was discovered; suit could have been brought even though the only known consequence of the negligence first discovered was damage to the house? It would not appear supportable to argue holes drilled into your roof by a contractor because of its negligence would only warrant a suit for nominal damages.
Given the ameliorative purposes of § 52-584, I cannot accept this draconian position. The statute describes two types of injury: "injury to the person or to real or personal property" and then states an action must be brought "within two years from the date the injury is sustained." Arguably then the two types of injury are treated separately for the purposes of applying the rule about when an action must be brought and the discovery of injury to property does not implicate the running of the statute as to a physical injury. The court was able to find one case which appears to support this view Gillespie v. American MotorsCorp., 277 S.E.2d 100, 101, 102 (NC, 1981).
A position that held that if a negligence action could have been brought, but was not, for damage to real or personal property over two years before suit was actually initiated, then a claim for physical injury would be barred, although it was only discovered within a period that was in fact two years before litigation was initiated, would be unfair. If the plaintiff could not have reasonably discovered the connection between a defendant's negligence and physical injury, why should a claim for such injuries be barred? This is especially so since if suit had been brought for negligent damage to property and the above suggested interpretation of § 52-584 were to prevail, then once physical injury was discovered the plaintiff might be precluded from amending the complaint under the so-called relation back rule. Even under a liberal interpretation of that rule as set CT Page 8993 forth in Giglio v. Conn. Light Power Co., 180 Conn. 230, 240
(1980) an amendment claiming physical injury where only injury to property had first been alleged would in all likelihood not be allowed because the defendant could argue it could have had no fair notice of a possible physical injury claim when the original action was brought for property damage. Cf Rosenberg v. Martin,
418 F.2d 520, 526 (CA2, 1973) where the court held that where a state prisoner's original complaint in a civil rights action against a police officer did not suggest a physical assault claim, an amendment adding such a claim did not relate back for limitation purposes to the date of the alleged assault.
In any event, the court will not grant the motion for summary judgment on the negligence count.
(3)
In its motion for summary judgment, the defendant also argues that the CUTPA count is not proper. The defendant's president submitted an affidavit but it only attempted to rebut one factual aspect of the negligence claim. In effect the defendant attacks the sufficiency of the allegations of the complaint so that what is before the court is a motion to strike.
The defendant asserts there is no CUTPA cause of action because there are no allegations that the negligence of the defendant's employees was unlawful or offended public policy, there are no allegations that such conduct was immoral, unethical or oppressive, there is no claim that the conduct causes substantial injury to consumers. There is not even a claim according to the defendant that there was a substantial injury to the plaintiff that could not have been avoided, Vezina v.Nautilus Pools Inc, 27 Conn. App. 810, 818, 819-(1992).
In paragraph 8 of the third count, the plaintiff asserts the following:
 "8. The defendant has adopted a method and business practice of installing alarm systems in a negligent and deficient manner and such actions constitute unfair trade practices within the meaning of the Connecticut General Statutes § 42-110b."
This allegation could have been tested by a request to CT Page 8994 revise but it was not. Suffice it to say that the plaintiff makes a broad allegation that the defendant has not just engaged in an isolated act of negligence involving the installation of an alarm system on her property but had adopted such method of negligent installation in dealing with all consumers. This certainly would seem to satisfy the first prong of the so-called cigarette rule.Conaway v. Prestia, 191 Conn. 484, 492 (1983). Since an isolated act of negligence is not claimed but a general business practice by a business that necessarily deals with many unsophisticated consumers regarding work at their homes, the court also cannot say this practice is not "oppressive".
As to the "substantial injury" prong, the court cannot conclude from the pleadings — and all the defendant appears to do is attack the language of the pleadings — that the injury here was one that could have been avoided. See Vezina v.Nautilus Probe Inc., supra.
Therefore, although it is true that in a negligence claim the first prong of the cigarette rule alone is insufficient to support a CUTPA violation, A-G Foods Inc. V. Pepperidge FarmsInc., 216 Conn. 200, 216-217 (1990), a more than a simple negligence claim is made here. In addition, here, the attack on the CUTPA count is really a motion to strike and the court in A-GFoods made its comments that the other two prongs of the rule were not satisfied only upon an examination of the trial record.
Although the defendant filed an affidavit of its president denying one aspect of the negligence claim what is involved is an attack on the legal sufficiency of the complaint. Even if a summary judgment motion can be used for that purpose, query whether it is then fair to require the non-moving party to respond with affidavits and documents to support every allegation of its complaint? The required response should be that necessitated by the attack and if a procedural or pleading attack is made it seems fair to conclude, as in a motion to strike, that the objection need only be answered by resorting to the pleadings[1].
The motion for summary judgment is denied.
CORRADINO, J.