SOUTHINGTON SAVINGS BANK *v.* KIMBERLY
RODGERS ET AL.
(13802)

O'Connell, Lavery and Hennessy, Js.

Argued September 27—decision released December 26, 1995

*Janet C. Hall*, with whom, on the brief, were *Christopher J. Hug* and *Louise Van Dyck*, for the appellant (plaintiff).

*Sebastian N. Giuliano,* with whom, on the brief, were *Thomas T. Lonardo* and *Nella R. Rafala,* for the appellees (defendants).

LAVERY, J. The plaintiff, Southington Savings Bank, appeals from the judgment of the trial court declaring a security interest null and void, and awarding the defendants punitive damages and attorney's fees. The plaintiff claims that the trial court improperly (1) found the plaintiff liable under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., despite a defectively pleaded counterclaim; (2) granted the equitable remedy of rescission of the mortgage; (3) awarded punitive damages; (4) found that the plaintiff's conduct amounted to a deceptive act in violation of CUTPA; and (5) rejected the plaintiff's special defense of equitable estoppel. We find, as a matter of law, that the plaintiff's conduct was not deceptive as defined under CUTPA and, therefore, reverse the judgment of the trial court.

The trial court found the following facts.[1] Prior to 1989, the defendants Joseph Geladino and Ann Marie Matta were in the business of building and selling houses in Southington.[2] Many of the defendants' devel-

---

[1] This case was consolidated with seventeen other related foreclosure actions at trial. In fourteen of the actions, the defendants filed counterclaims based on CUTPA. The trial court ordered judgment of strict foreclosure in the other seventeen actions and rejected all CUTPA counterclaims except for the counterclaim at issue in this case. The defendants in those seventeen actions filed a consolidated appeal. On October 24, 1995, this court affirmed the judgment of the trial court in those seventeen actions. See *Southington Savings Bank* v. *Village Builders & Developers, Inc.,* 39 Conn. App. 909, 665 A.2d 183 (1995).

[2] During the relevant times, the defendants Joseph Geladino and Ann Marie Matta were married. They were divorced prior to trial and Matta assumed her premarital name. The Geladinos were sole or majority shareholders in corporations known as Village Builders and Developers, Inc., G & M Builders and Developers, Inc., Quality Village Builders and Developers, Inc., Village Real Estate Company and Geladino Builders and Developers, Inc., all of which were engaged in the business of developing real estate.

opment undertakings were financed by the plaintiff, and the parties enjoyed a long and mutually prosperous relationship. On May 5, 1989, the defendants executed a note and mortgage for $1.2 million for the purpose of developing a thirty-six acre parcel in Southington known as Village Estates. The defendants purchased the land for $800,000 and, with the balance of the loan, proceeded to develop the property by installing roads and utilities.

When the mortgage funds were insufficient to complete the development, the defendants sought further financing from the plaintiff. Between August, 1989, and April, 1990, the defendants executed five unsecured promissory notes in favor of the plaintiff for a total sum of $250,000.[3] In addition to the five unsecured notes, the plaintiff released its lien on one parcel in Village Estates to allow the defendants to sell that parcel to the local water company. The plaintiff permitted the defendants to retain the proceeds from this sale to apply toward further development expenses.

In 1990, the real estate market in Southington began to decline. The defendants began to fall behind on their loan payments to the plaintiff and were unable to sell any of the remaining lots in Village Estates. On June 1, 1990, Ralph Mann, president of Southington Savings Bank, inspected most of the defendants' properties that were financed by the plaintiff. Mann determined that the construction advances made by the bank to fund the defendants' projects exceeded the actual stage of construction. Mann also noted that the amounts on deposit in the defendants' various accounts with the bank were decreasing.

---

[3] The defendants executed a note for $10,000 dated August 25, 1989, a note for $70,000 dated November 1, 1989, a note for $20,000 dated December 11, 1989, a note for $80,000 dated February 21, 1990, and a note for $70,000 dated April 16, 1990.

Throughout June and July, 1990, the parties discussed plans to resolve the defendants' financial problems. In connection with these discussions, the parties considered completing a spec. house on one of the Village Estates lots to generate sales. The plaintiff also agreed to give the defendants a loan to build a duplex on another lot in Village Estates.

The parties also discussed the possibility of securing the five unsecured loans by placing a mortgage on two lots owned by the defendants that were located on Mariondale Avenue. The defendants were initially reluctant to encumber these parcels. Mann told the defendants that if the five loans were not secured, it was unlikely that the bank would provide the defendants with any further financing, including the loan to build the spec. house. Throughout the summer of 1990, bank officers repeatedly contacted the defendants to schedule a closing to execute this mortgage.

By August, 1990, the defendants were approximately $55,000 in arrears on payments to the plaintiff. On August 23, 1990, Mann, concerned about the plaintiff's position, directed that a hold be placed on ten certificates of deposit held by the defendants and valued at approximately $290,000. In accordance with this hold, Mann instructed bank employees that the defendants could not withdraw funds from these accounts without Mann's approval. The plaintiff did not notify the defendants of the hold that was placed on these accounts.

On August 29, 1990, without notice of the hold placed on the ten certificates of deposit, the defendants executed a note in the amount of $261,533.22. This note was secured by the two Mariondale lots and was taken in satisfaction of the five past due unsecured notes. At that time, the defendants also executed a note and mortgage for $325,000 in order to construct the spec. house.

The defendants first became aware that the holds were in place in early September when they attempted to withdraw funds to pay their daughter's college tuition. They immediately demanded that the holds be released, but the plaintiff refused to do so. The plaintiff, however, allowed the defendants to withdraw the necessary funds to pay their daughter's tuition. On at least five or six occasions, the defendants sought to withdraw funds from these accounts. Each request was approved without any modification, and between August, 1990, and September, 1991, a total of $130,000 was withdrawn from these accounts. While the holds were in place, the defendants took no legal action against the bank to terminate the holds.

In September, 1991, the relationship between the parties broke down. The defendants filed an action in federal court against the plaintiff based on CUTPA.[4] The plaintiff thereafter commenced this action to foreclose the mortgage on the two Mariondale lots.[5] The defendants filed a counterclaim against the plaintiff under CUTPA alleging that the plaintiff illegally froze the defendants' personal and corporate savings accounts, making it impossible for the defendants to make the payments required under the note.

The trial court found that closing on the Mariondale mortgage to secure the unsecured loans, without previously notifying the defendants that a hold had been placed on their accounts, constituted a deceptive practice in violation of CUTPA. The trial court based this finding on the fact that the defendants were not given the opportunity to decide whether they would execute the Mariondale mortgage with full knowledge that the plaintiff had previously placed a hold on the defendants'

[4] The action filed in federal court was dismissed on procedural grounds.

[5] After the defendants executed the mortgages, the Mariondale lots were conveyed to the defendants' daughter, Kimberly Rodgers, subject to the plaintiff's mortgage.

accounts. As a remedy, the trial court declared the Mariondale note and mortgage null and void and awarded the defendants both counsel fees and punitive damages. We find that the plaintiff's practice was not deceptive and therefore reverse the judgment of the trial court.

The dispositive issue in this appeal is whether the plaintiff violated General Statutes § 42-110b[6] by closing on the Mariondale mortgage to secure the unsecured notes without disclosing to the defendants the hold previously placed on their certificates of deposit. In order to succeed on their CUTPA counterclaim, the defendants must show that the plaintiff's conduct was deceptive or violated public policy. *Jacobs* v. *Healey Ford-Subaru, Inc.*, 231 Conn. 707, 726, 652 A.2d 496 (1995); *Vezina* v. *Nautilus Pools, Inc.*, 27 Conn. App. 810, 819, 610 A.2d 1312 (1992).

An act or practice is deceptive if three conditions are met. " 'First, there must be a representation, omission, or other practice likely to mislead consumers. Second, the consumers must interpret the message reasonably under the circumstances. Third, the misleading representation, omission, or practice must be material—that is, likely to affect consumer decisions or conduct.' " *Caldor, Inc.* v. *Heslin*, 215 Conn. 590, 597, 577 A.2d 1009 (1990), cert. denied, 498 U.S. 1088, 111 S. Ct. 966, 112 L. Ed. 2d 1053 (1991); see also *Figgie International, Inc.*, 107 F.T.C. 313, 374 (1986).

We find, as a matter of law, that the plaintiff's conduct was not deceptive. "A failure to disclose can be deceptive only if, in light of all the circumstances, there is a duty to disclose." *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, 230 Conn. 486, 523, 646

---

[6] General Statutes § 42-110b (a) provides in pertinent part: "No person shall engage in . . . unfair or deceptive acts or practices in the conduct of any trade or commerce."

A.2d 1289 (1994). The plaintiff will be liable under CUTPA only if there is a statutory or common law duty to disclose to a depositor the existence of a hold placed on the depositor's accounts. We conclude that the plaintiff in this case had no duty to disclose to the defendants that it had placed a hold on the defendants' certificates of deposit prior to closing on the Mariondale mortgage.

A deposit is nothing more than a promise to pay from the bank to the depositor. See *Citizens Bank of Maryland* v. *Strumpf*, U.S. , 116 S. Ct. 286, 133 L. Ed. 2d 258 (1995). Once the defendants defaulted on their notes, the plaintiff had both a contractual[7] and a common law[8] right to set off the past due debt with deposits held by the bank. If the plaintiff exercised this right of setoff, it would have had no duty to notify the defendants. See *Elizarraras* v. *Bank of El Paso*, 631 F.2d 366, 372 (5th Cir. 1980); 5A Michie on Banks and Banking (1994 Ed.) § 115a; see also *Normand Joseph Enterprises, Inc.* v. *Connecticut National Bank*, supra, 230 Conn. 523–24 (bank served with execution has no duty to disclose to judgment creditor that bank exercised its right of setoff). We see no reason why a bank that exercises the less extreme remedy of placing a hold on the depositor's account when the indebtedness is due imposes a duty to disclose its actions immediately to the depositor.

We also find that the plaintiff's failure to inform the defendants about the hold was not likely to mislead

---

[7] The notes executed by the defendants provided that the plaintiff "shall have a lien on, a security interest in, and during the existence of an Event of Default, an option to set-off against, all deposits . . . of the Borrower . . . in the possession of . . . the Southington Savings Bank . . . without prior demand or notice . . . ."

[8] It is a general rule that when a depositor is indebted to a bank, the existing indebtedness is due and owing by the depositor to the bank and the debts are mutual, the bank may apply the deposit, or such portion as necessary, to the payment of the debt due it by the depositor, provided there is no express agreement to the contrary and the deposit is not specifically

the defendants in making their decision to execute the Mariondale mortgage. The evidence shows that the defendants were having serious financial problems. The plaintiff chose to work with the defendants to resolve their financial problems rather than to exercise its right to accelerate the various loans, to setoff the delinquent debt with the defendants' deposits and to foreclose on the properties. The defendants executed the Mariondale mortgage as part of a "work out plan" that included further financing from the bank to build the spec. house in Village Estates. These facts demonstrate that the plaintiff was simply protecting its position while it provided efforts to resolve the defendants' financial crisis. We conclude, as a matter of law, that the plaintiff's conduct was not a violation of CUTPA.[9]

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

applicable to some other particular purpose. See *Vic Gerard Golf Cars, Inc.* v. *Citizen's National Bank of Fairfield*, 528 F. Sup. 237, 241 (D. Conn. 1981).

[9] Because the plaintiff's conduct did not violate CUTPA, we do not reach the plaintiff's other claims on appeal.