**In re COLONIAL REALTY COMPANY, Jonathan Googel, Benjamin Sisti, Consolidated Debtors.**

**Hal M. HIRSCH, As Trustee of the Consolidated Estate of Colonial Realty Company, Jonathan Googel and Benjamin Sisti, Plaintiff,**

v.

**UNION TRUST COMPANY, Defendant.**

**Bankruptcy No. 90–21980.**

**Adversary No. 93–6339.**

United States Bankruptcy Court,

D. Connecticut.

April 21, 1997.

David L. Barrack, and David M. Pollack, Gainsburg & Hirsch, Purchase, NY, for Plaintiff.

Marc S. Edrich, and Steven R. Smith, Pepe & Hazard, Hartford, CT, for Defendant.

*MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

I.

Hal M. Hirsch, as Trustee of The Consolidated Estates of Colonial Realty Company

("Colonial"), Jonathan Googel ("Googel") and Benjamin Sisti ("Sisti"), on July 12, 1993, filed a complaint against Union Trust Company ("UTC"). The complaint, as amended, seeks to avoid and recover certain transfers by Colonial to UTC as either preferential or fraudulent transfers. The principal transaction at issue is the pledge of a $1,000,000 Certificate of Deposit ("the CD") by Colonial to UTC on July 6, 1990, as collateral for Colonial's $4,000,000 then existing indebtedness to UTC.

UTC has moved for summary judgment contending that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. The Trustee opposes the motion on the basis that genuine issues of material fact exist.

## II.

### UNCONTROVERTED BACKGROUND

Colonial, a Connecticut general partnership, with Googel and Sisti as the sole general partners, and a nationwide syndicator of real estate limited partnerships, on or about June 21, 1989, entered into an unsecured revolving credit agreement with UTC, a Connecticut banking corporation, to establish a credit line of $4,000,000 ("the first loan"). On July 5, 1990, $4,000,000 under the first loan having been drawn down and repayment being in default, the parties negotiated a new revolving credit agreement for the $4,000,000 ("the second loan"), under which UTC immediately loaned $4,000,000 to Colonial for the purpose of repaying the delinquent first loan. This loan was due December 31, 1990, unless demand was sooner made, and required monthly interest payments starting August 1, 1990. A further condition of the second loan was that the debtors execute a "Cash Collateral Account Security and Pledge Agreement" ("the Pledge Agreement"), under which Colonial "deposited" $1,000,000 into a

Certificate of Deposit ("the CD") purchased from UTC. The CD, dated July 5, 1990, had a maturity date of December 31, 1990 with interest at 8.15 percent per annum. UTC filed a UCC–I financing statement describing the CD.

Colonial, in the Pledge Agreement, granted UTC exclusive possession of the CD and authorized UTC to apply the CD to any of Colonial's obligations to UTC upon default in such obligations. The Pledge Agreement provided that upon the CD's maturity, its proceeds would be deposited in a named Colonial money market account at UTC. The $1,000,000 Colonial used to purchase the CD apparently came from an existing Colonial money market account at UTC. Colonial, on April 18, 1990, at UTC's demand, had deposited the $1,000,000 in this existing account.

Creditors, on September 14, 1990, filed an involuntary Chapter 7 petition against Colonial. On the same day, UTC cashed the CD and set off $1,016,073.61 (the $1,000,000 principal plus accrued interest) against $4,058,-189.73 then claimed due and owing under the second loan. Colonial had made an interest payment of $33,000 to UTC on July 24, 1990 under the second loan.

## III.

### POSITIONS OF THE PARTIES

Bankruptcy Code § 553(a) [1] provides that the Bankruptcy Code preserves the setoff rights that exist at common law. UTC contends it is entitled to summary judgment because, based upon the uncontroverted facts, when UTC set off the $1,016,073.61 of CD proceeds on September 14, 1990, the date of the filing of the bankruptcy petition, UTC had not improved its position during the prior 90 days contrary to the provisions of Bankruptcy Code § 553(b). [2] UTC states

---

1. Section 553(a) provides, in part: "... this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case...."

2. Section 553(b) provides:
(1) "... if a creditor offsets a mutual debt owing to the debtor against a claim against the

debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—
(A) 90 days before the date of the filing of the petition; and

that 90 days before the bankruptcy petition was filed, it had a $1,000,000 available setoff in the Colonial money market account which was succeeded by the $1,000,000 CD on July 6, 1990 and which CD UTC, on September 14, 1990, set off.[3]

The Trustee responds, based upon Googel's deposition, that when Colonial, on April 18, 1990, deposited $1,000,000 in its UTC money market account, it did so on the express promise of a UTC officer that UTC would not exercise any right of setoff against that particular deposit. If the court were to find that UTC held no enforceable right of setoff in the money market account, the Trustee asserts the pledge of the CD to UTC on July 6, 1990 constitutes a preference. *See* Bankruptcy Code § 547; *American Bank of Martin County v. Leasing Service Corporation (In re Air Conditioning. Inc. of Stuart)*, 845 F.2d 293, 296 (11th Cir.1988), *cert. denied*, 488 U.S. 993, 109 S.Ct. 557, 102 L.Ed.2d 584 (1988) (Bankruptcy trustee may recover from bank, under preferential transfer statute, certificate of deposit transferred as security).

## IV.

### DISCUSSION

 Connecticut law, like law generally, treats a deposit in a bank as a promise to pay from the bank to the depositor. If the depositor is also indebted to the bank, such debts of the depositor and the bank are mutual, and the bank may set off a past due debt with deposits held by the bank, provided there is no express agreement to the contrary and the deposit is not specifically applicable to some other particular purpose. *Southington Savings Bank v. Rodgers et al.*, 40 Conn.App. 23, 29, 668 A.2d 733 (1995),

*cert. denied*, 236 Conn. 908, 670 A.2d 1307 (1996); *Vic Gerard Golf Cars, Inc. v. Citizen's National Bank of Fairfield*, 528 F.Supp. 237, 241 (D.Conn.1981). UTC would have been estopped from exercising its right to set off the Colonial money market account if, in fact, an agent of the bank promised Colonial that UTC would refrain from setting off against the deposit. *See Texas Mortgage Services Corporation v. Guadalupe Savings & Loan Association (In the Matter of Texas Mortgage Services Corporation*, 761 F.2d 1068, 1075 (5th Cir.1985)) (bank estopped from exercising right of setoff; bank promised to maintain certain deposits as trust funds); *Federal Deposit Insurance Corporation v. Perry Brothers, Inc.*, 854 F.Supp. 1248, 1267 (E.D.Tex.1994), *aff'd in part*, 68 F.3d 466 (5th Cir.1995) (bank was estopped from exercising right of setoff by its prior promise not to exercise such right while parties were negotiating settlement of dispute and by its own inequitable behavior); *Union Bank & Trust Co. of Helena v. Loble (In re Gans & Klein Co.)*, 20 F.2d 124, 126 (9th Cir.1927), *cert. denied*, 275 U.S. 545, 48 S.Ct. 83, 72 L.Ed. 417 (1927) ("bank may so deal with a depositor as to waive or be estopped to assert the right of setoff").

## V.

### CONCLUSION

Fed.R.Civ.P. 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553,

---

(B) the first day during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.
(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.
11 U.S.C. § 553(b).

3. "The improvement in position test of § 553(b)(1) ... prevent[s] the creditor from using setoff to put itself in a better position than it was in prior to the ninety-day prepetition period.

The improvement in position test ... requires a calculation of the insufficiency that existed (1) 90 days before the date of filing of the petition and (2) on the date of the setoff. To the extent that the amount of the insufficiency on the date of setoff is less than that on the 90th day, the creditor has improved its position in an amount that is recoverable by the trustee." *Belford v. Union Trust Co. (In re Wild Bills, Inc.)*, 206 B.R. 8, 14 (Bankr.D.Conn. 1997) (citations and quotation marks omitted).

91 L.Ed.2d 265 (1986) (*quoting* Fed.R.Civ.P. 56(c)). The moving party has the burden of proving that no material facts are in dispute, and in considering such a motion, the court "must 'resolve all ambiguities and draw all reasonable inferences in favor' of the non-moving party...." *Mikinberg v. Baltic S.S. Co.*, 988 F.2d 327, 330 (2d Cir.1993) (*quoting Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975)). The court in deciding a summary judgment motion, " 'cannot *try* issues of fact, but can only determine whether there *are* issues of fact to be tried.' " *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984) (*quoting Empire Electronics Co. v. United States*, 311 F.2d 175, 179 (2d Cir.1962)) (emphasis in original).

■ The court concludes that a genuine issue of material fact exists regarding whether UTC held an enforceable right of setoff prior to July 6, 1990. Accordingly, UTC's motion for summary judgment must be, and hereby is, denied. In light of this ruling, it is unnecessary to discuss any other claims of the parties. It is

SO ORDERED.