Aimee **HILDABRAND**, Plaintiff,

v.

**DIFEO PARTNERSHIP, INC. and American Honda Finance Corporation, Defendants.**

**No. 3:98CV565(WWE).**

United States District Court, D. Connecticut.

Mar. 1, 2000.

Bernard T. Kennedy, Kennedy & Faulkner, New Haven, CT, for Aimee E. Hildabrand

Jonathan B. Troop, Day, Berry & Howard, Stamford, CT, for DiFeo Partnership, Inc.

Lawrence J. Kissling, III, New Canaan, CT, for American Honda Finance Corp.

## RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

This case concerns a car leasing agreement between plaintiff, Aimee Hildabrand, and defendants, DiFeo Partnership, Inc.[1] and American Honda Finance Corporation. Plaintiff alleges violation of the federal Consumer Leasing Act, 15 U.S.C. Section 1667 et seq., and the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. Section 42–110a et seq.

Now pending before the Court are cross-motions for summary judgment submitted by the defendants and the plaintiff.

### Background

The parties have submitted briefs, Local Rule 9(c) statements of facts, and exhibits, which reveal the following undisputed facts.

Fair Honda is one of several automobile dealerships comprising Danbury AutoPark in Danbury, Connecticut.

In 1995, plaintiff leased a Honda Civic from Fair Honda.

In 1998, plaintiff decided to lease another car. Plaintiff accordingly terminated her 1995 lease and entered into negotiations for a new lease of a 1998 Honda from Fair Honda.

At that time, plaintiff understood that she had exceeded her mileage allowance on her 1995 lease, and she believed that her overmileage charge from her 1995 lease would be built into her new lease payments. In her deposition, plaintiff states that she presumed that her overmileage payments would be built into her new lease payments based on her conversations with a prior dealer and her understanding that the specifics for the first car would be the same as for the second car.

Prior to execution of the 1998 lease, Fair Honda presented her with a closed-end vehicle lease agreement for the new vehicle. Under the terms of the lease, plaintiff was required to pay $250 per month for thirty-six months. The written lease set forth the amount due at lease signing as $811.64.

Prior to signing the lease agreement, plaintiff questioned the deposit amount of $811.64, because she thought that she should be required to pay only $500 at the lease inception. At that time, Fair Honda agreed to waive $311.64 in taxes and registration and document fees so that plaintiff would be required to pay only $500. Plaintiff then signed the lease and paid the $500 agreed upon as due at lease inception.

On February 9, 1998, plaintiff dropped off the 1995 Honda and picked up the new 1998 Honda Civic.

Fair Honda subsequently assigned the 1998 lease to defendant American Honda Finance Corporation.

After picking up her car, plaintiff called GE Capital, the owner of the 1995 lease, to request the return of her security deposit. Plaintiff was told that she was still responsible for a $2,000 excess mileage charge from the 1995 lease.

She then contacted Fair Honda and was informed that the excess mileage charge had not been built into the monthly payments for the 1998 lease as she had presumed.

Subsequently, plaintiff worked out an arrangement with GE Capital to pay off the excess mileage charge at a rate of $50 per month.

### Discussion

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d

---

1. DiFeo moves for summary judgment in the    shoes of Fair Honda.

979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American International Group, Inc. v. London American International Corp.,* 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

### A. *Consumer Leasing Act*

Plaintiff alleges that defendants violated the Consumer Leasing Act ("CLA") by (1) failing to disclose the correct amount of the payment due at inception and the total sum of payments due under the lease agreement, (2) inflating the gross capitalized cost, (3) inserting terms into the closed-end vehicle lease agreement that were not clear, conspicuous, and in meaningful sequence; and (4) failing to disclose the early termination charge. In her responsive brief, plaintiff also claims violation of the CLA due to misdisclosure of (1) the terms concerning the end of lease liability, (2) the terms concerning warranties, (3) the terms concerning wear and tear, and (4) the document fee tax. Plaintiff also claims that the registration fee was inflated by $10.

Defendants assert that summary judgment should enter on all of these claims. Plaintiff counters that summary judgment should be granted in her favor.

The CLA was created to provide meaningful, fair and accurate disclosure of leasing terms and costs associated with a lease agreement. *See* 15 U.S.C. § 1601(b). A lessor is required to set forth "clearly and conspicuously" certain terms and conditions in a lease agreement. 12 C.F.R. § 213.1 et seq.

To facilitate compliance with these regulations, the Federal Reserve Board drafted model forms for use by automobile lessors. "Any lessor who properly uses the material aspects of any model disclosure form established by the Board under this subsection shall be deemed to be in compliance with the disclosure requirements to which the form relates." 15 U.S.C. § 1667f(b)(4).

Plaintiff does not dispute that the lease agreement section entitled "Federal Consumer Leasing Act Disclosures" contains the exact terms and language as set forth in the model closed-end lease form. *See* 12 C.F.R. Section 213, Appx. A.

In addition to the fact that the use of the model form entitles defendants to the presumption of compliance, plaintiff's claims of CLA violations will fail for the following reasons.

#### 1. *Misdisclosure of amount of the payment due at inception and total payments*

Plaintiff asserts that Fair Honda misdisclosed the amount due at lease inception and the amount of the total payments. The lease indicates that the amount to be paid at lease inception was $811.64 and the total amount of payments was to be $9,311.64. Plaintiff paid $500 at lease inception and will actually pay total payments of $9,000 (36 payments of $250).

The undisputed evidence demonstrates that both plaintiff and Fair Honda agreed that she should pay $500 instead of the $811.64, after Fair Honda waived $311.64 in taxes and registration and document fees. Accordingly, the discrepancy of

$311.64 [2] between the amount stated on the lease and the amount of plaintiff's actual obligation arises from a modification of the contract terms specifically sought by the plaintiff. The Court is not persuaded that Fair Honda committed a misdisclosure based on these facts.

## 2. *Inflation of Gross Capitalized Cost*

Plaintiff alleges that Fair Honda inflated the gross capitalized cost, which is defined by 12 C.F.R. § 213.4(f) as the amount agreed upon by the lessor and the lessee as the value of the leased property and any items that are paid for during the lease term, such as taxes, insurance, service agreements, and any outstanding balance from a prior loan or lease.

Plaintiff indicated in her deposition that she had agreed to the lease term stating the value of the Honda as $14,527.68. The lease agreement expressly stated that the gross capitalized cost comprised "the agreed upon value of the vehicle ($14,-527.68) and any items I pay for over the Lease Term (such as taxes, fees, service contracts, insurance and any outstanding prior loan or lease balance)." An itemization of the gross capitalized cost shows that Fair Honda added the amount of a $450 fee charged by American Honda Finance Corporation for lease acquisition. Plaintiff did not check that box on the lease agreement to indicate that she wanted an itemization of the gross capitalized cost, and therefore she never received the itemization of the gross capitalized cost.[3]

Accordingly, the evidence reveals that Fair Honda did not inflate the amount of the gross capitalized cost, which amount was properly disclosed to plaintiff.

**2.** The document fee tax was $17.64. The registration fee was $125. The documentation fee was $169. The sum of these amounts is $311.64.

**3.** The model form for a closed-end lease agreement contains a clause regarding gross

## 3. *Contract Terms Below Plaintiff's Signature*

Plaintiff alleges that the terms of the closed-end vehicle lease agreement are not "clear, conspicuous, and in meaningful sequence in that, it attempts to bind the plaintiff to contract terms below her signature."

█ Only certain disclosures are required to be segregated pursuant to 12 C.F.R. Section 213.3(a)(2). A lease may have terms placed below the signature line and on the reverse side of the agreement without violating the CLA. *See Demitropoulos v. Bank One Milwaukee, N.A.,* 915 F.Supp. 1399, 1410–11 (N.D.Ill.1996) (No violation of CLA where contract terms other than those enumerated in 12 C.F.R. Section 213.3(a)(2) were placed on reverse side of lease).

█ In this instance, none of the terms placed below the signature line are those required to be segregated by 12 C.F.R. Section 213.3(a)(2). Furthermore, directly above the plaintiff's signature on the front side of the lease, the lease states:

NOTICES TO LESSEE AND CO-LESSEE: (1) CAUTION—IT IS IMPORTANT THAT I THOROUGHLY READ THIS AGREEMENT BEFORE I SIGN IT. (2) **I WILL NOT SIGN THIS AGREEMENT BEFORE I READ BOTH SIDES OF IT** OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. (3) I AM ENTITLED TO AN EXACT COPY OF THE LEASE I SIGN. I WILL KEEP IT TO PROTECT MY LEGAL RIGHTS. **BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE READ BOTH SIDES** AND RECEIVED A COMPLETED COPY OF THIS LEASE AGREEMENT.

capitalized cost that is nearly identical to the clause used in the instant lease. The model form also includes a box for the lessee to check in order to receive an itemization of the gross capitalized cost amount.

In her deposition, plaintiff stated that the manner in which Fair Honda presented the lease to her did not cause her any confusion. Summary judgment will enter in favor of the defendants on these allegations.

### 4. *Early Termination Clause*

Plaintiff alleges that the lease "failed to disclose the charge to be imposed upon the plaintiff in the event of voluntary early termination, as to 'any other amounts arising from my failure to keep promises under this lease' without disclosing how these charges are to be determined."

Lessors are required to disclose the conditions under which the lessee or lessor may terminate the lease prior to the end of the lease term and the amount of penalty for early termination or a description of the method for determination of the amount of that penalty. 15 U.S.C. Section 1667a(11); 12 C.F.R. § 213.4(g)(1). "Descriptions that are full, accurate, and are not intended to be misleading will comply with Section 213.4(g)(1), even if the descriptions are complex." 12 C.F.R. § 213.4, Supp. 1, 4(g).

The early termination clause of the instant lease states:

EARLY TERMINATION LEASE LIABILITY: If I decide to terminate this Lease early, ... I will owe Lessor: (a) any monthly payments already due and unpaid and any other amounts arising from my failure to keep promises under this Lease; plus (b) any official fees and taxes imposed in connection with the termination; plus (c) the amount, if any, by which the then Adjusted Lease Balance (determined on an Actuarial basis, where earnings are accrued on the first day of every period) exceeds the Realized Value of the Vehicle, described below, at early termination.

Plaintiff indicated in her deposition that this description informed her of her liability in the event of early termination.

Plaintiff's brief asserts further that the lease is deficient because the term "Adjusted Lease Balance" is not explained. However, that term is defined in the first paragraph of the lease section entitled, "Ending My Lease." Summary judgment will be granted in defendants' favor on these allegations.

### 5. *Misdisclosure of End of Lease Liability*

■ In her brief, plaintiff claims that Fair Honda failed to disclose her liability at the end of her lease, which plaintiff asserts is required by 15 U.S.C. Section 1667a(11) and 12 C.F.R. Section 213.4(g). However, as defendants point out, Section 1667a(11) and 12 C.F.R. Section 213.4(g) concern disclosures related to liability after early termination of a lease rather than end of lease liability.

Plaintiff also seems to make an assertion that the purchase option was improperly disclosed. However, the lease agreement clearly provides that plaintiff has "an option to purchase the Vehicle AS–IS, WHERE–IS at the end of the Lease Term for $8,979.20, plus any required taxes and fees." The Court can find no violation of the CLA and its regulations based on these facts.

### 6. *Misdisclosure of Warranties*

■ In her brief, plaintiff asserts that the lease failed to disclose the warranties provided to plaintiff.

Section 1667a(6) requires a statement identifying all express warranties and guarantees from the manufacturer or lessor with respect to the leased property that apply to the lessee. *See also* 12 C.F.R. Section 213.4(p).

The Official Commentary to 12 C.F.R. Section 213.4(p) provides that the statement "may be brief and need not describe or list all warranties applicable to specific parts such as for air conditioning, radio, or tires in an automobile." Further, it states that "a manufacturer's warranties may be

identified simply by reference to the standard manufacturer's warranty." It is insufficient if the lease states only that there *may* be warranties from the manufacturer. *Highsmith v. Chrysler Credit Corporation,* 18 F.3d 434, 440 (7th Cir.1994).

In this instance, the lease satisfies the disclosure requirement of the CLA because it states that a new vehicle *is* covered by the manufacturer's new vehicle warranty.

### 7. *Misdisclosure of Wear and Use Provision*

■ Plaintiff asserts that the lease's description of excessive wear and use constitutes virtually anything that normally happens during three years of driving a vehicle, which violates the requirement that the lease state reasonable standards for wear and tear. *See* 12 C.F.R. § 213.4. Plaintiff contends further that the lease does not comply with Section 42–271 of the Connecticut General Statutes, which allows for excess wear and tear charges only where the lessor sets forth reasonable standards.

The lease states:

Excessive Wear and Use includes, but is not limited to: (a) any mechanical defect or failure; (b) broken or missing parts or accessories; (c) damaged body, fenders, metal work, lights or trim, or damaged or broken glass; (d) paint which is chipped; (e) interior rips, stains, burns or excessively worn areas; (f) missing or unsafe wheels or tires (including spare), tires with less than 1/8th inch of tread remaining at the shallowest point; (g) damage or any other condition that makes the Vehicle unsafe or unlawful to operate; or (h) safety and emission control equipment not in proper order.

Pursuant to this clause, excessive wear and use constitutes conditions that materially impair the function or value of the vehicle. As these terms are reasonable for a car lease, the wear and use provision

complies with the CLA and Conn.Gen.Stat. Section 42–271.

### 8. *Document Fee Tax*

Plaintiff claims that defendant has improperly attempted to impose a document fee tax of $17.64, which plaintiff claims is a tax on both Fair Honda's documentation fee of $169 and the Connecticut Department of Motor Vehicle registration fees of $125. Plaintiff also asserts that Fair Honda misdisclosed the amount of the registration fees, which should have been $127.50 rather than $125. Plaintiff's brief states that she believes the $2.50 discrepancy was actually included in Fair Honda's $169 document fee. Plaintiff has not provided any statutory or regulatory authority for her claims of a CLA violation based on these facts.

Furthermore, the Court finds no evidence of any misdisclosure or improper charges. The lease agreement clearly disclosed the $169 document fee and the $125 registration fees. Although Fair Honda actually incurred $127.50 in motor vehicle registration fees, it only charged the plaintiff $125 as indicated. No evidence demonstrates that the $2.50 discrepancy was charged to the plaintiff in the documentation fee. Additionally, no evidence shows that the $17.50 document fee tax is actually a tax on both the documentation fee and the registration fee.[4] The Court is not persuaded that there is a violation of the CLA based on the registration fees, documentation fee, or documentation fee tax.

### 9. *Lien Fee*

In her brief, plaintiff claims that the $125 registration was inflated by $10 because it included an unnecessary $10 lien fee. Plaintiff has referred to no statutory or regulatory basis for her claim that the lien constitutes an improper charge.

Plaintiff cites *Cheshire Mortgage Service, Inc. v. Montes,* 223 Conn. 80, 93, 612 A.2d 1130 (1992) to support her contention

---

**4.** Connecticut sales tax is 6%. $17.64 is 6% of    the $169 documentation fee.

that the lien fee was improperly charged. In that case, mortgagors claimed a violation of the Truth in Lending Act, where a mortgagee had charged them a fee of $27.50 to record the mortgage, and another fee of $22.50 to record an assignment of the mortgage in the future that never actually took place. The Connecticut Supreme Court held that the fee charged to record a future assignment of the lease violated the Truth in Lending Act. Significantly, *Cheshire Mortgage Service* did not hold that the $27.50 fee to record the mortgage violated the Truth in Lending Act.

By affidavit of its General Manager, David Sackaroff, Fair Honda explained that the $10 lien fee covered the cost charged by the State of Connecticut to record the lien on the vehicle. Accordingly, this is not a fee to record an assignment of the lien sometime in the future. No evidence supports a finding that the lien charge was improper.

## B. *Connecticut Unfair Trade Practices Act*

Plaintiff claims that defendant Fair Honda violated the Connecticut Unfair Trade Practices Act ("CUTPA") by (1) failing to disclose accurate financial terms of the transaction; (2) failing to disclose the adverse consequences of the lease transaction; (3) unilaterally imposing unconscionable, unfair, or oppressive lease terms; (4) changing the lease term, down payment, monthly payments without informing the plaintiff; (5) inflating the gross capitalized cost; and (6) failing to pay off the full terms of the note in regards to the trade-in vehicle.

Plaintiff's CUTPA claim is premised largely on her assertion that a violation of the CLA occurred, which gives rise to a per se violation of CUTPA. Since the Court has found no violation of the CLA, the Court will consider whether the evidence supports plaintiff's CUTPA claims.

To prevail on a claim of a CUTPA violation, plaintiff must prove that defendants, while acting in trade or commerce, engaged in unfair or deceptive acts that caused plaintiff to suffer an ascertainable loss. Conn.Gen.Stat. §§ 42–110b(a) & 42–110g(a). Plaintiff may establish a CUTPA violation by showing either a deceptive or unfair practice or a practice amounting to a violation of public policy. *Vezina v. Nautilus Pools, Inc.,* 27 Conn.App. 810, 819, 610 A.2d 1312 (1992).

A practice is unfair (1) if it offends public policy as it has been established by statutes, the common law or otherwise, (2) if it is immoral, unethical oppressive or unscrupulous, or (3) if it causes substantial injury to consumers. *Old Quarry Association v. Hickey,* 659 F.Supp. 1064, 1073 (D.Conn.1986). A practice is deceptive if it is a materially misleading representation, omission, or other practice that a consumer reasonably interpreted under the circumstances. *Southington Savings Bank v. Rodgers,* 40 Conn.App. 23, 28, 668 A.2d 733 (1995), *cert. denied,* 236 Conn. 908, 670 A.2d 1307 (1996).

As discussed previously, no evidence supports plaintiff's claim that Fair Honda improperly failed to disclose accurate financial terms or inflated the gross capitalized cost. In her deposition, plaintiff stated that there were no undisclosed adverse consequences, and she denied that any lease terms, the down payment or the monthly payment had been changed without informing her.

Although plaintiff's complaint states that defendants "failed to pay off the full terms of the note in regards to the vehicle-traded in," the plaintiff admits that she never had a "note" for the 1995 Honda Civic, and that she did not consider the return of the 1995 Honda Civic to be a "vehicle trade-in."

The Court assumes that this final allegation refers to the plaintiff's concerns regarding the $2,000 excess mileage charge. No evidence indicates that plaintiff was

deceived into believing that the excess mileage charge would be incorporated into her lease payments for the 1998 Honda Civic. Accordingly, no evidence demonstrates that defendants acted unfairly or violated some public policy concern. Summary judgment will enter on plaintiff's CUTPA claim in favor of the defendants.

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment [docs. # 19 and # 35] are GRANTED, and plaintiff's motion for summary judgment [doc. # 23] is DENIED. The clerk is instructed to enter judgment in favor of the defendants and to close this case.

So Ordered.